[No. S003708. Aug. 18, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID KENNETH KURTZMAN, Defendant and Appellant.

COUNSEL

Peter A. Dullea and Terrence L. Cannon for Defendant and Appellant.

Caryl Warner, William Swearinger, Janet McGinnis, John E. Dannenberg, Harvey R. Zall, State Public Defender, and Bruce E. Cohen, Deputy State Public Defender, as Amici Curiae on behalf of Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Paul C. Ament and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

Ira Reiner, District Attorney (Los Angeles), Harry B. Sondheim and Brent Riggs, Deputy District Attorneys, as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

**ARGUELLES, J.**—Defendant, David Kenneth Kurtzman, appealed from a judgment of second degree murder, contending that his conviction was tainted by the trial court's comments to the jury, during deliberations, that it must unanimously agree on whether defendant was guilty of second degree murder before "considering" voluntary manslaughter. We conclude that our decision in *Stone* v. *Superior Court* (1982) 31 Cal.3d 503 [183 Cal.Rptr. 647, 646 P.2d 809], properly interpreted, simply restricts a jury from *returning a verdict* on a lesser included offense before acquitting on a

greater offense and does not preclude a jury from *considering* lesser offenses during its deliberations. The trial court's comments were therefore erroneous. In light of the sequence of jury instructions and deliberations in this case, however, the trial court's remarks did not prejudicially affect the jury's verdict. Accordingly, while we disagree with the Court of Appeal's discussion of this issue we conclude that the judgment of the Court of Appeal should be affirmed.

## 1. *Underlying Facts*

This case arises out of the August 4, 1985, stabbing of Michael Stephenson, a transient sleeping in a Santa Barbara park. Defendant was, at the time, a 17-year-old student at Northwestern Preparatory School which apparently helps students improve their academic credentials with a view to entering one of the military service academies. Defendant lived in a dormitory with several other students who formed a group called "the Nine."[1]

On August 2, 1985, several members of the Nine got into a quarrel with members of a Hispanic gang called "City Rockers." While no serious fighting occurred, one member of the Nine, Eric R., was kicked in the back, and one of the City Rockers apparently had a knife. As a result of this incident, defendant's dormitory mates were concerned for their safety and decided to retaliate. One student in particular, James Trammel, encouraged them to purchase dark clothing, knives, ropes, hooks, and materials for making sodium bombs.[2] On the evening of August 3, defendant, Trammel, and Eric R., dressed in their dark clothing and went out to determine where the City Rockers congregated. They allegedly wanted to warn students to avoid those areas. Defendant was armed with a six-inch military knife. Asked by a dormitory mate if he wanted to kill someone with the knife, defendant replied to the effect: "If we have to."

The three young men became separated, and defendant and Trammel followed someone they thought was a City Rocker into the park where they lost him. They proceeded to a gazebo in the park where they were to meet Eric R. if the group became separated. It was about 1 a.m. Suddenly, someone at the top of the gazebo sat up. Trammel told defendant he thought this was one of the City Rockers. Defendant, who had started down the steps, turned, saw the person rolling up a sleeping bag, and attacked him with the knife over the victim's cries of "No, my friend, no." Defendant inflicted multiple stab wounds, one severing the spinal cord and one cutting

---

[1] The name was apparently chosen for its similarity to a group in the book and movie The Lords of Discipline called "the Ten."

[2] Trammel was also charged with murder as a result of his participation in the events leading to Stephenson's death. His case was severed from defendant's.

the victim's throat. After returning to the dormitory, Trammel bragged that they had "bagged a Mexican," and defendant said he had killed him just like Trammel had showed him. He said it was just like killing an animal.

At first, some of defendant's dormitory mates would not believe the crime had been committed. After seeing bloodstains, and finally going to the park and seeing the victim's body for themselves, however, they were convinced. Several of the young men contacted the police, and defendant was arrested the same day. After waiving his *Miranda* rights (see generally *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]), defendant confessed to the crime and the tape of his confession was later played to the jury. Defendant testified in his own defense, claiming he had been frightened on the night of the crime, was startled when Stephenson appeared, and had thought his life was in danger. A number of witnesses testified that defendant was an Eagle Scout and an honest and nonviolent young man. Defendant apparently had no prior criminal record.

## 2. *Jury Instructions*

It was in the context of this tragic scenario that the jury instruction problem in this case arose. The People initially requested that the court give CALJIC No. 8.75.[3] Both counsel agreed, however, that CALJIC No. 8.75

---

[3] CALJIC No. 8.75 reads: "In this case, defendant is charged [in Count __] with the offense of murder. Murder is divided into two degrees—murder in the first degree and murder in the second degree. Voluntary manslaughter [and involuntary manslaughter] [is an] [are] lesser and necessarily included offense[s].

"The court [has provided] [will provide] you with verdict forms for each count charged and for each lesser and necessarily included offense. You should determine whether defendant is guilty or not guilty of the offense of first degree murder [charged in Count __] [and any special finding you are directed to make]. If you unanimously agree that defendant is guilty of said offense [charged in Count __] [and any special finding you are directed to make], you will have your foreman date and sign the guilty verdict [and return with it into court]. Nothing further will be then required of you as to Count __.

"If you unanimously agree that defendant is not guilty of murder in the first degree, you will have your foreman date and sign the not guilty verdict of the offense of murder in the first degree and you will determine whether defendant is guilty or not guilty of murder in the second degree. If you unanimously agree that defendant is guilty of the offense of murder in the second degree, you will have your foreman date and sign the guilty verdict of murder in the second degree and nothing further will be required of you as to the offense of murder [charged in Count __]. If you unanimously agree that defendant is not guilty of the offense of murder in the second degree, you will have your foreman date and sign the verdict not guilty of murder in the second degree and you will determine whether defendant is guilty or not guilty of the lesser included offense of voluntary manslaughter [or said lesser included offense of involuntary manslaughter]. If you unanimously agree that defendant is guilty or not guilty of said lesser included offense of voluntary manslaughter [or said lesser included offense of involuntary manslaughter], you will have your foreman date and sign such guilty or not guilty verdict [and return it into court together with the not guilty verdict on the offense of first

should not be given unless the jury indicated it could not reach agreement. Instead the court gave CALJIC No. 17.10, which more generally informed the jury that if it were not convinced beyond a reasonable doubt that defendant was guilty of the offense charged, it could convict him of a lesser included offense.[4] The jury was also instructed pursuant to CALJIC Nos. 8.70, 8.71, and 8.72 that if in doubt as to first or second degree murder, it should return second degree, and if in doubt as between murder and manslaughter, it should return a verdict of manslaughter. Defense counsel objected even to CALJIC No. 17.10 on the ground the jury should not be told to start with the highest degree of offense first. Jury deliberations commenced on Wednesday, March 19, 1986.

On the morning of the third day of deliberations, the jury indicated that it had failed to reach agreement on murder but could agree on manslaughter. The court decided not to read CALJIC No. 8.75 but to give it "orally" by which it apparently meant a loose paraphrase of the instruction. It therefore told the jury that to be sure they were "doing this right": "I am going to ask you to go back and deliberate on the question of murder in the first degree. I want you to come back to me and tell me if you agree or disagree on that issue. . . . Before you get to the other lesser included offenses, I want to find out if you have unanimously agreed on the original charge, which is murder in the first degree. . . . tell me what the status is on that one charge

---

degree murder and second degree murder [charged in Count __] [as well as any special finding you are directed to make]].

"You will note from this instruction that you must unanimously agree that the defendant is not guilty of first degree murder before you may find defendant guilty or not guilty of second degree murder. If you are unable to unanimously agree on the charge of first degree murder, your foreman shall report such fact to the court. If you are unable to unanimously agree on the charge of second degree murder, your foreman shall report such fact to the court.

"You must unanimously agree that defendant is not guilty of second degree murder before you find him guilty or not guilty of voluntary or involuntary manslaughter.

"If you unanimously agree that defendant is not guilty of the offense of first degree murder and second degree murder [charged in Count __], but after due and sufficient deliberation you cannot agree that defendant is guilty or not guilty of either voluntary manslaughter or involuntary manslaughter, your foreman shall report such fact to the court and then return to the court the signed not guilty verdict of the offense of first degree murder and second degree murder [charged in Count __].

"You will note from this instruction that if you unanimously agree that defendant is not guilty of the offense of first degree murder and second degree murder [charged in Count __], you must have your foreman date and sign such verdicts and return them into court regardless of what may happen in your deliberations on any lesser included offense[s] of voluntary manslaughter and involuntary manslaughter."

[4] CALJIC No. 17.10 (1984 rev.) as given in this case stated: "If the jury is not satisfied beyond a reasonable doubt that the defendant is guilty of the offense charged and it unanimously so finds, it may convict him of any lesser included offense if the jury is convinced beyond a reasonable doubt that he is guilty of such lesser offense. [¶] The offense of murder-second degree is a lesser included offense to the offense charged. [¶] The offense of voluntary manslaughter is a lesser offense to the offense of murder."

before we go to the lesser ones." The jury returned a verdict of not guilty as to first degree murder.

The judge then asked the jurors to go back and deliberate on the issue of murder in the second degree, and it soon became clear the jury was deadlocked by a vote of eight to four. The jury posed questions to the court on the relationship between second degree murder and voluntary manslaughter. At one point the judge, addressing the jury foreman, noted the jury seemed still to be considering manslaughter. He said: "You understand that I wanted you to deliberate on that issue [second degree murder] and that issue alone?" The judge said he questioned "whether you should be able to deliberate" on voluntary manslaughter and reiterated: ". . . my understanding is that you were to—I thought I instructed you to deliberate on second, in that area first."

Finally on Monday, March 24, after a weekend break, the jury returned with additional questions including: "Can we find the defendant guilty of manslaughter without unanimously finding him not guilty of murder in the second degree?" Expressing his understanding of *Stone* v. *Superior Court, supra,* 31 Cal.3d 503 and CALJIC No. 8.75, the judge wrote back on Monday afternoon: "No, you must unanimously agree on the second degree murder offense before *considering* voluntary manslaughter." (Italics added.)[5] Tuesday morning the jury returned a verdict of second degree murder.[6] Defendant contends these instructions and comments to the jury improperly interfered with the jury's deliberations and unfairly coerced it into returning a guilty verdict on a higher degree of homicide than might otherwise have been the case.

3. *The Ruling in Stone v. Superior Court*

This case is the inevitable successor to *Stone* v. *Superior Court, supra,* 31 Cal.3d 503. In that case we held that a "trial court is constitutionally obligated to afford the jury an opportunity to render a partial verdict of acquittal on a greater offense when the jury is deadlocked only on an uncharged lesser included offense. Failure to do so will cause a subsequently declared mistrial to be without legal necessity." (*Id.* at p. 519.)

---

[5] Defense counsel objected that the proper answer to the jury's question was "yes." He also contested the propriety of the instructions in a motion for new trial.

[6] In addition to finding defendant guilty of second degree murder in violation of Penal Code section 187, the jury found defendant had personally used a deadly or dangerous weapon, to wit: a knife, in violation of Penal Code section 12022, subdivision (b). Defendant received a sentence of 16 years to life, but because of his age was ordered housed at a California Youth Authority facility pursuant to Welfare and Institutions Code section 1731.5, subdivision (c).

*Stone* went on to suggest a number of procedures a trial court might use in guiding a jury charged with the task of reaching a verdict on greater and lesser included offenses. It indicated as a judicially declared rule of criminal procedure that: "[¶] When a trial judge has instructed a jury on a charged offense and on an uncharged lesser included offense, one appropriate course of action would be to provide the jury with forms for a verdict of guilty or not guilty as to each offense. The jury must be cautioned, of course, that it should first decide whether the defendant is guilty of the greater offense before considering the lesser offense, and that if it finds the defendant guilty of the greater offense, or if it is unable to agree on that offense, it should not return a verdict on the lesser offense." (31 Cal.3d at p. 519.)

This was not a mandatory procedure, however, and *Stone* also indicated that trial courts retained the discretion to let a case go to the jury without a specific structure for the return of verdicts. It stated in this regard: "Alternatively, the court may decide to wait and see whether the jury is unable to reach a verdict; if it is, the court should then inquire whether the jury has been able to eliminate any offense. If the jury declares itself hopelessly deadlocked on the lesser offense yet unanimous for acquittal on the greater offense, and the court is satisfied that the jury is not merely expressing a tentative vote but has completed its deliberations, the court must formally accept a partial verdict on the greater offense. It is within the discretion of the court to order further deliberations if it perceives a reasonable probability that a verdict will be reached that will dispose of the entire proceeding." (31 Cal.3d at pp. 519-520.)

*Stone* addressed the situation in which the jury was unanimous on the greater offense but in disagreement on the lesser. This inevitably leads to the question in the present case—what if the situation is reversed and disagreement is limited to the greater offense? ■ As discussed hereafter, we conclude that *Stone* should be read to authorize an instruction that the jury may not *return a verdict* on the lesser offense unless it has agreed beyond a reasonable doubt that defendant is not guilty of the greater crime charged, but it should not be interpreted to prohibit a jury from *considering* or *discussing* the lesser offenses before returning a verdict on the greater offense.

### 4. *Whether One Must Acquit of the Greater Offense Before Considering Lesser Included Offenses*

The contention that *Stone* authorizes the trial judge to instruct a jury not even to consider lesser included offenses before deciding to acquit of the greater, a position apparently embraced by the Court of Appeal in the present case, rests on slender California authority. Indeed it rests primarily

on a single word in *Stone* where, as quoted above, we stated the jury should be told to decide whether defendant was guilty of the greater offense before *considering* the lesser included offense. (*Stone, supra,* 31 Cal.3d at p. 519.)

This language was repeated in a footnote in *People v. McDonald* (1984) 37 Cal.3d 351, 378, footnote 25 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011], but in that opinion it was clearly dictum. The point in *McDonald* was that given a jury's decision to acquit defendant of robbery, the defendant could not thereafter be convicted, on retrial, of attempted robbery. Mention of *Stone*'s "considering" language was incidental. A strict acquittal-first position also seems to have been espoused without a great deal of analysis in *People v. Gonzalez* (1983) 141 Cal.App.3d 786 [190 Cal.Rptr. 554]. Only CALJIC Nos. 17.10 and 17.11 were at issue in that case, instructions not evoking the order-of-deliberations issue as clearly as CALJIC No. 8.75. *Gonzales* concluded: "We see no practical difference between an instruction which commands the jury to apply the concept of reasonable doubt 'serially,' considering each charge in turn, and one which requires them to inspect the offenses 'together.'" (*Id.* at pp. 793-794.)[7]

When the word "considering" in *Stone* is read in context, however, it becomes clear that the term was not intended to have such a broad-ranging effect. While *Stone*'s use of the concepts of "considering" the lesser, "deciding" or "finding" defendant's guilt on each offense, and "returning a verdict" on a lesser offense has led to some confusion, the overall import of *Stone* is simply that the jury must acquit of the greater offense before returning a verdict on the lesser included offense, and no further control of the sequence of jury deliberations was intended. Indeed, this interpretation is the only reading of the opinion consistent with the fact that *Stone* presented the alternative of not giving the jury any explicit guidance unless a deadlock appeared to have developed. Jurors given no explicit guidance in the matter could, of course, commence deliberations in any order they wished, whether considering the lesser offenses first or beginning with the greater. It would be anomalous if one jury was forced into a strict pattern of considering offenses and another was not, based on no particular reason other than the judge's decision whether or not to anticipate a possible deadlock.

Interpreting *Stone, supra,* 31 Cal.3d 503, to require acquittal of the greater offense before returning a verdict on a lesser included offense is consistent

[7]Other states have been quite deliberate in adopting a strict acquittal-first rule requiring a jury to acquit of the greater before considering the lesser included offense. (See *State v. Wussler* (1984) 139 Ariz. 428, 430 [679 P.2d 74, 76]; *State v. Wilkins* (1977) 34 N.C.App. 392, 399-400 [238 S.E.2d 659, 664-665]; *People v. Boettcher* (1987) 69 N.Y.2d 174, 182-183 [513 N.Y.S.2d 83, 86-87, 505 N.E.2d 594]; *State v. McNeal* (1980) 95 Wis.2d 63, 68-69 [288 N.W.2d 874, 876]; cf. *Commonwealth v. Edgerly* (1982) 13 Mass.App. 562, 582-583 [435 N.E.2d 641, 652-653].)

with the language of CALJIC No. 8.75 which, in its paragraphs most pertinent to the order-of-deliberations issue, states: "You will note from this instruction that you must unanimously agree that the defendant is not guilty of first degree murder before you may find defendant guilty or not guilty of second degree murder . . ." and again: "You must unanimously agree that defendant is not guilty of second degree murder before you find him guilty or not guilty of voluntary or involuntary manslaughter." (*Ante* fn. 3, pars. 4, 5.) The official comment to CALJIC No. 8.75 also correctly perceived *Stone* as setting an order for the return of verdicts "without precluding the jury from deliberating on the charged and lesser included offenses in whatever order they wish."

Finally, we note that an interpretation of *Stone* as requiring acquittal first of the greater offense before returning a verdict on the lesser included offense, without further control of the sequence of jury deliberations, has been adopted by several Courts of Appeal in this state. (See *People* v. *Gibson* (1987) 195 Cal.App.3d 841, 848 [241 Cal.Rptr. 126]; *People* v. *Campbell* (1987) 193 Cal.App.3d 1653, 1673 [239 Cal.Rptr. 214]; *People* v. *Zwiers* (1987) 191 Cal.App.3d 1498, 1503-1506 [237 Cal.Rptr. 123]; see also *People* v. *Reeves* (1981) 123 Cal.App.3d 65, 70 [176 Cal.Rptr. 182], disapproved on other grounds in *People* v. *Sumstine* (1984) 36 Cal.3d 909, 919, fn. 6 [206 Cal.Rptr. 707, 687 P.2d 904].)[8]

### 5. *Whether We Should Return to Pre-Stone Law*

The State Public Defender urges that we return to what he describes as the rule prior to *Stone*—no mandatory order in the sequence of deliberations and no requirement of unanimity on the greater before returning a verdict on the lesser included offense.

As for the sequence of deliberations, we have noted in other contexts that jurors should not be unduly influenced in their determination of the facts by matters extraneous to the evidence and arguments of counsel. (*People* v. *Rodriguez* (1986) 42 Cal.3d 730, 768, 772, 775 [230 Cal.Rptr. 667, 726 P.2d 113] [judicial comment on the evidence]; *People* v. *Gainer* (1977) 19 Cal.3d 835, 848 [139 Cal.Rptr. 861, 566 P.2d 997, 97 A.L.R.3d 73] [admonition to minority jurors].) This does not mean, however, that they must be free of all judicial influence. (*Rodriguez, supra,* 42 Cal.3d at p. 768.) Where charges and associated verdict forms are complex, the trial judge has the discretion we described in *Stone, supra,* 31 Cal.3d 503 to

---

[8]This approach has also been adopted by at least one other jurisdiction. (See *Dresnek* v. *State* (Alaska App. 1985) 697 P.2d 1059, 1061-1064, affd. 718 P.2d 156, 157.) Certiorari was denied in *Dresnek sub nom. Spierings* v. *Alaska* (1986) 479 U.S. 1021 [93 L.Ed.2d 729, 107 S.Ct. 679], Justice White dissenting.

forestall an anticipated deadlock or to assist the jury in moving beyond an actually threatened deadlock[9] by directing the jury under an instruction such as CALJIC No. 8.75 at least as to the sequence in which verdicts will have to be ultimately rendered. That instruction helpfully returns the jury to the courtroom when the jury seems unable to agree on the greater charge in the course of its deliberations; and at that point the trial judge has the opportunity to emphasize that while the jury may consider charges in any order it wishes to facilitate ultimate agreement on a conviction or acquittal, it may not return a verdict on lesser offenses unless it has unanimously agreed on a disposition of the greater. It also permits the court to reiterate that if the jury is unanimous on a greater offense, no further deliberation may be necessary and to correct any misunderstanding of the law that the jury may express.

As for our asserted history of not requiring acquittal on the greater offense before returning a verdict on the lesser, the State Public Defender's cases, while showing that juries in fact reached verdicts on lesser degrees of crime or lesser included offenses, do not indicate how the greater offense was then handled. (See, e.g., *Gomez* v. *Superior Court* (1958) 50 Cal.2d 640, 642 [328 P.2d 976]; *In re Hess* (1955) 45 Cal.2d 171, 173 [288 P.2d 5]; *People* v. *Greer* (1947) 30 Cal.2d 589, 595 [184 P.2d 512]; *People* v. *McFarlane* (1903) 138 Cal. 481, 482 [71 P. 568]; *People* v. *Smith* (1901) 134 Cal. 453, 454 [66 P. 669]; see also *People* v. *Henderson* (1963) 60 Cal.2d 482, 484, 496 [35 Cal.Rptr. 77, 386 P.2d 677].) Did the prosecutor, for example, stipulate to the entry of verdict on a lesser offense? (Cf. Pen. Code, § 1140 [consent of both parties to discharge the jury].) Did he object and seek a mistrial? Did the trial judge simply enter a verdict on the lesser offense without further discussion with counsel or despite counsel's objections? Typically these cases appear in a double jeopardy context where an attempt has been made to try defendant on the higher degree of crime after *reversal* of the lesser offense for which defendant was convicted. Details of entry of that first judgment—our area of concern—are not given and leave actual practice in the trial courts unclear.

Our attention has been directed to Penal Code section 1160 which states: ". . . Where two or more offenses are charged in any accusatory pleading, if the jury cannot agree upon a verdict as to all of them, they may render a

---

[9] We would reject the suggestion that the acquittal-first instruction should be given only when a jury has actually reached deadlock. Cases cited for that proposition in fact stand for the principle that an instruction such as CALJIC No. 8.75 may be given to *avoid* a possible deadlock should one be anticipated under the circumstances of the particular case. (See, e.g., *People* v. *Harris* (1985) 175 Cal.App.3d 944, 956-957 [221 Cal.Rptr. 321]; *People* v. *Soto* (1984) 157 Cal.App.3d 694, 713 [204 Cal.Rptr. 204].) Under *Stone* the trial judge may choose whether and when an acquittal-first instruction should be given to facilitate the jury's deliberations.

verdict as to the charge or charges upon which they do agree, and the charges on which they do not agree may be tried again." (See also *Stone, supra,* 31 Cal.3d at p. 517.) Where the offenses are in fact greater and lesser included, however, this language must be interpreted in light of the doctrine of implied acquittal. Even very early cases sometimes comment that the jury should first determine guilt or innocence of the charged crime before "proceeding to inquire" if defendant is guilty of a lesser offense. (*People* v. *Gilmore* (1854) 4 Cal. 376, 377; and see *People* v. *Gordon* (1893) 99 Cal. 227, 230 [33 P. 901]; see also *People* v. *Moran* (1970) 1 Cal.3d 755, 763 [83 Cal.Rptr. 411, 463 P.2d 763] [if defendant were found guilty of both the greater and lesser offense, conviction of the greater would control].) We therefore conclude there is no clear California practice to which to return, and that acquittal of the greater offense before returning a verdict on the lesser included offense represents an appropriate balancing of interests.

Defendant urges that a jury may not feel "comfortable" with the post-*Stone* instructions and the need to formally find defendant not guilty on the greater offense before returning a verdict on the lesser included offense. Jurors are called upon, however, to perform a sometimes difficult job in reaching a verdict in a criminal case. They must make tough decisions in applying the facts to the law, and while we can make it fair to both the prosecution and defense, we cannot make it comfortable for jurors. (Cf. *Zwiers, supra,* 191 Cal.App.3d at p. 1506; *Boettcher, supra,* 69 N.Y.2d at p. 183 [513 N.Y.S.2d at p. 87].) Further, as long as the jury is not prohibited from considering the lesser included offense and its elements in the jury's determination on the greater charge, we perceive no legitimate reason it should feel uncomfortable.

## 6.    *Whether We Should Adopt the Law of Other Jurisdictions*

Other states have adopted varying rules governing the issue of whether jury deliberations should be guided into a particular sequence. As noted above, some states have adopted a strict acquittal-first rule under which the jury must acquit of the greater offense before even considering lesser included offenses. (See *ante* fn. 7.) Other states simply require that a jury first consider the greater offense, and if unable to agree on the greater, then proceed to consider the lesser included offense. Thus rather than adopting an acquittal-first rule, they authorize a "disagreement" instruction guiding the jury's deliberations.[10] As noted above, our rule does not require the jury

---

[10]See *Bragg* v. *State* (Ala.App. 1984) 453 So.2d 756, 759; *People* v. *McGregor* (Colo.App. 1981) 635 P.2d 912, 914; *Zackery* v. *State* (1987) 257 Ga. 442, 443 [360 S.E.2d 269, 270-271]; *Alexander* v. *State* (1981) 247 Ga. 780, 784-785 [279 S.E.2d 691, 695]; *State* v. *Korbel* (1982) 231 Kan. 657, 661-662 [647 P.2d 1301, 1305]; *People* v. *Woods* (1982) 416 Mich. 581, 609-610 [331 N.W.2d 707, 719-720] certiorari denied *sub nom. Michigan* v. *Alexander* (1983) 462

to deliberate in any particular sequence, and hence we need not deal with difficult questions as to whether a strict structuring of the sequence of deliberations may in and of itself significantly affect outcome.[11]

Several federal jurisdictions, given jury instructions which seem to suggest one must acquit of the greater offense before "determining" defendant's guilt of a lesser included, have also had occasion to consider the issue. (See United States v. Tsanas (2d Cir. 1978) 572 F.2d 340, 344, cert. den. 435 U.S. 995 [56 L.Ed.2d 84, 98 S.Ct. 1647]; see also 1 Devitt & Blackmar, Federal Jury Practice and Instructions: Civil and Criminal (3d ed. 1977) § 18.05, p. 582.) The majority that have considered the meaning of such language seem to have concluded that, given the tactical advantages of various instructions, either a strict acquittal-first instruction or a disagreement instruction may be given at defendant's option.[12]

We need not engage in this national debate, as our rule derived from Stone, supra, 31 Cal.3d 503, seems adequate to protect both the defendant's interest in not improperly restricting the jury's deliberations and the People's interest in requiring the jury to grapple with the prospect of defendant's guilt of the greatest offense charged.

---

U.S. 1134 [77 L.Ed.2d 1370, 103 S.Ct. 3116]; People v. Mays (1980) 407 Mich. 619, 623 [288 N.W.2d 207, 208]; People v. Hurst (1976) 396 Mich. 1, 10 [238 N.W.2d 6, 10, 82 A.L.R.3d 235]; People v. Johnson (1978) 83 Mich.App. 1, 6-10 [268 N.W.2d 259, 263-264]; State v. Muscatello (1977) 57 Ohio App.2d 231, 251-252 [387 N.E.2d 627, 641-642]; Tarwater v. Cupp (1988) 304 Ore. 639, 645 [748 P.2d 125, 128]; State v. Allen (1986) 301 Ore. 35, 39-40 [717 P.2d 1178, 1180-1181]; State v. Ogden (1978) 35 Ore.App. 91, 93-96 [580 P.2d 1049, 1052-1055]. The position of some jurisdictions is not particularly clear as to whether an acquittal-first or a disagreement instruction is approved. (See, e.g., State v. Reyes (1985) 5 Hawaii App. 651, 658 [706 P.2d 1326, 1330]; State v. Clayton (Utah 1983) 658 P.2d 624, 627.)

[11] Some studies indicate that agenda can influence outcome and that a strict order of deliberations commencing with the more serious offense may produce harsher verdicts. (State v. Allen, supra, 301 Ore. at pp. 39-40 [717 P.2d at pp. 1180-1181]; and see Hastie et al., Inside the Jury (Harv. U. Press 1983) p. 70; Levine & Plott, Agenda Influence and Its Implications (1977) 63 Va.L.Rev. 561, 564-565; Greenberg et al., Considering the Harshest Verdict First: Biasing Effects on Mock Juror Verdicts (1986) 12 Personality & Soc. Psychology Bull. 41, 44-45, 47.) We express no opinion on the validity of that conclusion. We do note, however, that the Greenberg study, which most directly concluded that controlling the order of deliberations affects outcome, also indicated that, in its study, cases had been presented to individual, mock jurors. It admitted the result might be different if problems were posed to actual jurors required to deliberate to a consensus. (Greenberg, supra, at p. 49.)

[12] See United States v. Butler (D.C. Cir. 1971) 455 F.2d 1338, 1340 [147 App.D.C. 270]; Fuller v. United States (D.C. Cir. 1968) 407 F.2d 1199, 1227 [132 App.D.C. 264], certiorari denied 393 U.S. 1120 [22 L.Ed.2d 125, 89 S.Ct. 999]; United States v. Roland (2d Cir. 1984) 748 F.2d 1321, 1323-1325; Tsanas, supra, 572 F.2d at pages 344-346; United States v. Hanson (8th Cir. 1980) 618 F.2d 1261, 1265-1266, certiorari denied 449 U.S. 854 [66 L.Ed.2d 67, 101 S.Ct. 148]; Catches v. United States (8th Cir. 1978) 582 F.2d 453, 458-459; United States v. Jackson (9th Cir. 1984) 726 F.2d 1466, 1469; but see Pharr v. Israel (7th Cir. 1980) 629 F.2d 1278, 1281-1282, certiorari denied 449 U.S. 1088 [66 L.Ed.2d 815, 101 S.Ct. 880].

## 7. *Whether Reversal Is Required in This Case*

██ It is clear under the acquittal-first rule suggested in *Stone* and clarified here that the trial court erred in instructing the jury not to "deliberate on" or "consider" voluntary manslaughter unless and until it had unanimously agreed on second degree murder. We conclude, however, that because the jurors had in fact deliberated on both degrees of murder and on voluntary manslaughter for two days prior to the first erroneous instruction and because even thereafter, despite erroneous guidance from the court, they obviously continued to consider both voluntary manslaughter and second degree murder, it is not reasonably probable that a different result would have occurred had the contested instructions not been given.

As noted above, the jurors were originally instructed under CALJIC No. 17.10 which simply told them that if not satisfied unanimously that defendant was guilty of the offense charged, first degree murder, they could find him guilty of second degree murder or voluntary manslaughter as lesser included offenses. Under CALJIC No. 8.72, they were also told if in doubt as between murder and manslaughter, they should resolve the doubt in favor of manslaughter. They reported agreement on manslaughter, but, asked to deliberate on first degree murder, were able to return a verdict of acquittal on that charge.[13] Three degrees of homicide, defendant's mental state, and defendant's defense of honest but unreasonable belief in self-defense were thus obviously under active consideration.

Thereafter they continued to pose questions on the relationship between second degree murder and voluntary manslaughter. Even though they were told to deliberate on second degree murder alone, it is not clear they understood that admonition to preclude considering all aspects of defendant's mental state relating to malice, including whether malice had been negated by defendant's imperfect self-defense claim. The court's final erroneous instruction was, after all, in response to the jury's question as to whether it might "find the defendant guilty" of manslaughter without "finding him not guilty" of murder in the second degree. The court's answer then, may have been understood to control the return of verdicts, not limit what evidence could be considered. Jurors had been instructed under CALJIC No. 1.01 (1979 rev.) to consider the instructions as a whole and under CALJIC No. 17.41 to remain open to the arguments of fellow jurors. Until the day before returning their verdict, jurors obviously continued to consider manslaughter, and it is not clear that they did not in fact do so thereafter.

---

[13] Some confusion may have been caused by CALJIC No. 17.49 which told the jury only one verdict form could be returned. After *Stone, supra,* 31 Cal.3d 503, this may in some cases be incorrect as jurors finding defendant guilty of a lesser included offense should also be prepared to return a verdict form indicating acquittal on the greater offense.

Certainly here there was no coercion of a single juror or a small minority of jurors. ■ ■■ ■■ ■ The reported split was eight to four and it totally shifted following the weekend hiatus and further deliberations.[14] Given this pattern of continued full and productive deliberations and given the evidence of defendant's guilt, it is not reasonably probable jurors would have found defendant not guilty of second degree murder absent the court's erroneous comments.

8.  *CALJIC Nos. 8.75, 17.12*

While the judgment of conviction need not be reversed in this case, it is worth noting that CALJIC No. 8.75 and to some extent CALJIC No. 17.12 (1984 rev.) (its counterpart in nonhomicide cases) may confuse jurors, as it did the trial court in this case, as to how deliberations should proceed. ■ Use in CALJIC No. 8.75 of the concepts of determining defendant's guilt, finding defendant guilty, deliberating on lesser offenses, agreeing on guilt, and returning verdicts on various offenses may create ambiguity as to just what is prohibited and what is required. "Determine," for example, may be understood to mean deliberate or consider rather than return a final verdict. Likewise, it is potentially misleading to tell jurors they must, if unanimous, return a verdict of not guilty of the higher degree of crime "regardless of what may happen in your deliberations on any lesser included offense. . . ." (CALJIC No. 8.75, *ante* fn. 3, par. 7.) Instructions should not suggest that a not guilty verdict must actually be returned before jurors can consider remaining offenses.[15] Jurors may find it productive in their deliberations to consider and reach tentative conclusions on all charged crimes before returning a verdict of not guilty on the greater offense. They may return verdicts of not guilty of the greater and guilty of a lesser included offense at the same time, by simultaneously returning to the court the appropriate verdict forms. (Cf. *ante* fn. 3, pars. 3, 6.)[16]

Again, however, we conclude that while the trial court's instructions in this case, expressing its interpretation of CALJIC No. 8.75, were wrong, the error was not prejudicial.

The judgment of the Court of Appeal affirming defendant's conviction is affirmed.

---

[14] As part of his motion for new trial, defendant offered tapes and transcriptions of interviews with four jurors clarifying the nature of the eight-to-four split and the impact of the court's instructions on the jurors' deliberations. This evidence was properly rejected. (Evid. Code, § 1150.)

[15] Likewise, CALJIC No. 17.10 (1984 rev.) should not so suggest and its wording is in fact less likely to be misunderstood.

[16] As noted *ante* footnote 13, CALJIC No. 17.49 should not indicate the contrary.

Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Eagleson, J., and Kaufman, J., concurred.