Filed 10/25/13  P. v. Moody CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>DOMINIC MOODY,<br><br>     Defendant and Appellant. | B239021<br><br>(Los Angeles County<br>Super. Ct. No. VA119131) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Margaret M. Bernal, Judge.  Affirmed in part and reversed in part with directions.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Marc A. Kohm, Supervising Deputy Attorney General, and Alene M. Games, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant Dominic Moody appeals from the judgment entered following a jury trial in which he was convicted of second degree robbery, grand theft, and second degree burglary.  Defendant contends the trial court erred by (1) failing to grant his motion for judgment of acquittal at the conclusion of the prosecutor's case-in-chief because there was insufficient evidence of force or fear to support his robbery conviction; (2) failing to instruct, sua sponte, that he could not be convicted of both robbery and grand theft for taking the same property; and (3) failing to instruct, sua sponte, that if the jury had a reasonable doubt as to which of the two offenses, robbery or grand theft, defendant committed, it must convict him only of grand theft.  We reverse defendant's grand theft conviction, but otherwise affirm.

## BACKGROUND

On the morning of March 23, 2011, defendant entered Daniel's Jewelers in the Lakewood Mall in Lakewood and asked to see various engagement rings.  Store employee Zoila Romero showed defendant numerous rings.  Defendant asked to try on a $25,000 woman's ring.  Romero told defendant it was store policy to ask for identification when showing a customer any ring valued at more than $10,000.  Defendant gave Romero his identification and asked to try on the ring.  Romero became nervous because defendant seemed nervous.  Pursuant to another store policy, Romero asked assistant manager Takuhi Maggie Derian to assist her.  Romero handed Derian defendant's identification and the ring he wanted to see.  Romero then phoned mall security officers regarding defendant.

Defendant repeatedly asked Derian to allow him to try on the ring, and she repeatedly refused, telling him it was against the store's policy.  Although defendant was making Derian very uncomfortable, she showed him the ring by holding it between her thumb and index finger.  Defendant "reached over," placed his hand over Derian's hand and the ring, "grabbed" the ring, and "pulled."  Derian "pulled back" and struggled to keep the ring, but defendant was stronger and wrested the ring away from Derian,

2

breaking two of her fingernails in the process. Defendant ran out of the store with the ring.

A Lakewood Mall security officer watching monitors of the mall's security cameras saw defendant running down the corridor where Daniel's Jewelers was located and out of the mall to the parking lot, where he entered a white U-Haul passenger van that drove away. Sheriff's Deputies Brian Bank and his partner heard a broadcast about a robbery at Lakewood Mall and the white U-Haul van. Three to five minutes later, they spotted the van stopped at a traffic light, followed it, and stopped it. They arrested defendant and advised him pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602], and he agreed to speak to them. Defendant initially said he knew nothing about a ring, but later said he threw it out of the window of the van after seeing a "police" car get behind him. Defendant's girlfriend, who had also been in van, subsequently handed the ring over to a deputy. It still had the Daniel's price tag attached to it.

Defendant, who represented himself pursuant to *Faretta v. California* (1975) 422 U.S. 806, 821 [95 S.Ct. 2525], testified that he needed money to support himself and his girlfriend, who was pregnant, and decided to steal jewelry that he could sell. He went into Daniel's intending to steal something. He looked at and tried on several rings, but thought they would not have brought a sufficient amount of money. He asked to see the ring that was about $25,000. Romero asked for his identification, and he gave it to her. Derian came over to assist Romero. Romero put the ring on defendant's finger. Derian began to remove the ring from defendant's finger, and defendant ran out of the store with the ring. Defendant admitted he had prior convictions for robbery, grand theft, and unlawfully taking a vehicle.

The jury convicted defendant of second degree robbery, grand theft, and second degree burglary. Defendant waived his right to a jury trial on allegations that he had suffered a prior serious felony conviction within the scope of the "Three Strikes" law and Penal Code section 667, subdivision (a)(1), and had served two prior prison terms within the scope of Penal Code section 667.5, subdivision (b). (Undesignated statutory

3

references are to the Penal Code.) The court found all of the allegations true, but struck the prior prison term enhancements. It sentenced defendant to a second strike term of six years for the robbery, plus five years for the section 667, subdivision (a)(1) enhancement. The court stayed the sentence on the other two counts pursuant to section 654.

**DISCUSSION**

**1.     Sufficiency of evidence of robbery**

Robbery is defined as the taking of personal property of some value, however slight, from a person or the person's immediate presence by means of force or fear, with the intent to permanently deprive the person of the property. (§ 211; *People v. Marshall* (1997) 15 Cal.4th 1, 34.)

Defendant contends there was insufficient evidence of force or fear to support his robbery conviction.

To resolve this issue, we review the whole record in the light most favorable to the judgment to decide whether substantial evidence supports the conviction, so that a reasonable jury could find guilt beyond a reasonable doubt. (*People v. Tully* (2012) 54 Cal.4th 952, 1006.) Substantial evidence is "'"evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."'" (*Ibid*.) We presume the existence of every fact supporting the judgment that the jury could reasonably deduce from the evidence and make all reasonable inferences that support the judgment. (*People v. Barnes* (1986) 42 Cal.3d 284, 303; *People v. Catlin* (2001) 26 Cal.4th 81, 139.) When reviewing a claim the trial court erred by denying a motion for acquittal under section 1118.1, we apply the same standard as when evaluating the sufficiency of evidence to support a conviction, except that we consider only the evidence in the record at the time the motion was made. (*People v. Augborne* (2002) 104 Cal.App.4th 362, 371; *People* v. *Smith* (1998) 64 Cal.App.4th 1458, 1464.)

"The force required for robbery is more than 'just the quantum of force which is necessary to accomplish the mere seizing of the property.' [Citation.]" (*People v. Garcia*

4

(1996) 45 Cal.App.4th 1242, 1246, disapproved on another ground in *People v. Mosby* (2004) 33 Cal.4th 353, 365, fns. 2, 3.) But the degree of force is immaterial; all that is required is sufficient force to overcome the victim's resistance. (*Garcia*, at p. 1246; *People v. Jones* (1992) 2 Cal.App.4th 867, 870.) "[W]here a person wrests away personal property from another person, who resists the effort to do so, the crime is robbery, not merely theft." (*People v. Burns* (2009) 172 Cal.App.4th 1251, 1257.) Whether the evidence demonstrates a use of force or fear is a factual question. (*People v. Mungia* (1991) 234 Cal.App.3d 1703, 1707.) In determining whether force was used, the trier of fact may consider and compare the physical characteristics of the victim and the defendant. (*Id*. at p. 1709.)

Derian's testimony about her physical struggle with defendant to retain possession of the ring constituted substantial evidence supporting the jury's implicit finding that defendant used force to take the ring. Notably, the jury was able to observe the relative sizes of Derian and defendant and Derian's demonstrations during her testimony of what she and defendant did during their struggle over the ring. We further note that defendant implicitly acknowledged his greater strength when cross-examined by the prosecutor, who asked whether Derian had "control over" defendant's hand. Defendant responded, "I don't think she had control of my hand, because she's a woman. I'm a man."

Defendant repeatedly argues that he used surprise, not force, to obtain the ring. Defendant may have hoped to obtain the ring merely by surprise, but when Derian physically resisted his attempt to grab the ring, he used force to overcome her resistance, breaking two of her fingernails in the process.

Accordingly, the trial court did not err by denying defendant's section 1118.1 motion.

## 2. Failure to instruct, sua sponte, that defendant could not be convicted of both robbery and grand theft

Defendant contends that the trial court erred by failing to instruct, sua sponte, that defendant could not be convicted of both the greater offense of robbery and the lesser

included offense of grand theft, and that in order to convict him of grand theft, it must first acquit him of robbery. He argues that such an instruction "would have properly focused the jury's attention on the critical issue in this case, namely, whether the quantum of force used to snatch the ring crossed the line between grand theft and robbery." He adds, "Nor did the superior court ever clarify for the jury the amount of force required for robbery versus grand theft."

A defendant may not be convicted of both a greater offense and a necessarily included offense based upon the same set of facts. (*People v. Sanchez* (2001) 24 Cal.4th 983, 987.) "Conviction of a lesser included offense is an implied acquittal of the offense charged when the jury returns a verdict of guilty of only the lesser included offense. [Citation.] When the jury expressly finds defendant guilty of both the greater and lesser offense, however, there is no implied acquittal of the greater offense. If the evidence supports the verdict as to a greater offense, the conviction of that offense is controlling, and the conviction of the lesser offense must be reversed. [Citations.]" (*People v. Moran* (1970) 1 Cal.3d 755, 763 (*Moran*).)

Theft is a lesser offense that is necessarily included within robbery. (*People v. Bradford* (1997) 14 Cal.4th 1005, 1055.)

To avoid double jeopardy issues, a jury may be instructed that it must acquit on a greater offense before it can return a verdict on a lesser offense (*People v. Kurtzman* (1988) 46 Cal.3d 322, 329 (*Kurtzman*)), and the California Supreme Court has encouraged trial courts to so instruct at the outset of deliberations (*People v. Fields* (1996) 13 Cal.4th 289, 309). But "the trial court retains discretion to dispense with instructing the jury pursuant to *Kurtzman* until such time as a jury deadlock arises." (*Fields*, at p. 309.) Thus, unless "jurors express their inability to agree on a greater inclusive offense, while indicating they have reached a verdict on a lesser included offense" (*ibid.*), such an instruction need not be given sua sponte. Here, no such deadlock occurred. Accordingly, the trial court was not required to give such an instruction.

In addition, a *Kurtzman* instruction would not have "focused the jury's attention on" whether defendant used force to take the ring. For example, the non-homicide *Kurtzman* instruction in the CALCRIM standard instructions is CALCRIM No. 3519, which states, in pertinent part, "If all of you find that the defendant is not guilty of a greater charged crime, you may find (him/her) guilty of a lesser crime if you are convinced beyond a reasonable doubt that the defendant is guilty of that lesser crime. A defendant may not be convicted of both a greater and lesser crime for the same conduct. [¶] [Now I will explain to you which charges are affected by this instruction:] [¶] [*<insert crime>*, as charged in Count __, is a lesser crime to *<insert crime>* [as charged in Count __.]] [¶] . . . [¶] It is up to you to decide the order in which you consider each greater and lesser crime and the relevant evidence, but I can accept a verdict of guilty of the lesser crime only if you have found the defendant not guilty of the greater crime." Nothing in CALCRIM No. 3519 identifies, compares, or contrasts any elements of the greater and lesser crimes.

Defendant cites CALCRIM No. 3516; *People v. Allen* (1999) 21 Cal.4th 846, 851; and *People v. Jaramillo* (1976) 16 Cal.3d 752, 757, in support of his claim, but these cases and CALCRIM No. 3516 pertain to convictions of inconsistent alternative charges that do not constitute greater and lesser included offenses, such as a theft offense and receiving stolen property. The Bench Notes to CALCRIM No. 3516 (2013 ed.) at page 986 state, "If the case involves separately charged greater and lesser offenses, the court should give CALCRIM No. 3519."

In addition, there was no need for an instruction to "focus" the jury on the "critical issue" of whether defendant used force to steal the ring. Defendant's testimony constituted an admission of guilt of grand theft and second degree burglary. In argument, the prosecutor told the jury that the "only real question in this case" was whether defendant used force to take the ring. In response, defendant argued, based upon his own testimony, he did not use force or fear. Thus, it could not possibly have been made more clear to the jury that the sole issue in dispute was whether defendant used force.

7

To the extent defendant argues that the trial court should have elaborated upon the definition of "force," his claim fails because he did not request such an instruction and the term has no technical meaning peculiar to the law. (*People v. Anderson* (1966) 64 Cal.2d 633, 639–640.)

It was, nonetheless, error for the trial court to enter judgment upon both the greater (robbery) and lesser included (grand theft) convictions. This error is easily solved by reversing the conviction for the lesser included offense. (*People v. Sanders* (2012) 55 Cal.4th 731, 736.)

**3.     Failure to instruct, sua sponte, pursuant to *Dewberry***

When the evidence is sufficient to support a conviction of both the offense charged and a lesser included offense, the trial court must instruct the jurors that if they have a reasonable doubt as to which offense has been committed, they must convict only of the lesser offense. (*People v. Dewberry* (1959) 51 Cal.2d 548, 555 (*Dewberry*).) Such an instruction must be given sua sponte. (*People v. Crone* (1997) 54 Cal.App.4th 71, 76.) This requirement applies even if both the greater and lesser offense are charged. (*Id.* at p. 78.) Failure to so instruct is subject to harmless error analysis under *People v. Watson* (1956) 46 Cal.2d 818, 836. (*Crone*, at p. 78.)

We asked the parties to submit letter briefs addressing the issue of whether the trial court erred by failing to instruct, sua sponte, pursuant to *Dewberry*, *supra*, 51 Cal.2d at page 555, with respect to the robbery and grand theft charges, and, if the court so erred, whether the error was prejudicial. Defendant argued in his letter brief that the trial court prejudicially erred by failing to so instruct, while the Attorney General argued in her letter brief that any error was harmless.

We necessarily conclude that the trial court erred by failing to instruct, sua sponte, pursuant to *Dewberry*, *supra*, 51 Cal.2d at page 555, with respect to the robbery and grand theft charges. Nonetheless, we conclude the error was harmless. The jury was instructed on the reasonable doubt standard and told, "Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt . . . ." It was

8

further told, "Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty." (CALCRIM No. 220.) The jury was further instructed that "[t]o prove that the defendant is guilty of [robbery], the People must prove that: [¶] 1. The defendant took property that was not his own; [¶] 2. The property was taken from another person's possession and immediate presence; [¶] 3. The property was taken against that person's will; [¶] 4. The defendant used force or fear to take the property or to prevent the person from resisting; [¶] AND [¶] 5. When the defendant used force or fear to take the property, he intended to deprive the owner of it permanently." (CALCRIM No. 1600.) The jury was given separate verdict forms for each count and told, "If you are able to reach a unanimous decision on only one or only some of the charges, fill in those verdict forms only, and notify the bailiff. Return any unsigned verdict form." (CALCRIM No. 3550.) We presume the jury followed these instructions. (*People v. Williams* (2010) 49 Cal.4th 405, 469.) We further presume that jurors are intelligent and capable of understanding and correlating all jury instructions given. (*People v. Kegler* (1987) 197 Cal.App.3d 72, 80.) Accordingly, we conclude the jury understood that each charge was to be separately considered, it could return not guilty verdicts on some charges and guilty verdicts on other charges, and it could not return a guilty verdict on any given charge unless all jurors unanimously agreed that the prosecution had proved each element of the charge beyond a reasonable doubt. Thus, the jury's guilty verdict on the robbery charge establishes that the jury found the prosecution had proved every element of robbery, including the use of force or fear, beyond a reasonable doubt. There is no reasonable probability that, had the trial court given a *Dewberry* instruction, defendant would have obtained a more favorable result with respect to the robbery charge.

## DISPOSITION

Defendant's conviction of grand theft is reversed and may not be retried. The judgment is otherwise affirmed. The trial court is directed to prepare an amended abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.


MALLANO, P. J.

We concur:


ROTHSCHILD, J.


JOHNSON, J.

10