Filed 7/16/25  P. v. Whitecarter CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ISAAC JAQUAN WHITECARTER,<br><br>        Defendant and Appellant. | A170489<br><br>(Contra Costa County<br>Super. Ct. No. 042201310) |

Defendant Isaac Jaquan Whitecarter appeals a final judgment following his trial for mayhem, assault by means of force likely to cause great bodily injury, and criminal threats.  The jury convicted him on all counts and found true the special allegation that he personally inflicted great bodily injury.  On appeal, Whitecarter argues that the trial court erred in failing to properly instruct the jury that it could consider the lesser included offenses before reaching a verdict on the greater offense, in violation of *People v. Kurtzman* (1988) 46 Cal.3d 322 (*Kurtzman*).  We find no prejudicial error and affirm.

## I.  BACKGROUND

### A.  Procedural History

A felony information charged Whitecarter with:  (1) mayhem (Pen.

1

Code, § 203;[1] count 1); (2) assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4); count 2); and (3) criminal threats (§ 422, subd. (a); count 3). With respect to count 2, the information alleged that Whitecarter personally inflicted great bodily injury in violation of section 12022.7, subdivision (a).

After closing arguments, the trial court instructed the jury that "[s]imple battery is a lesser crime of mayhem, charged in [c]ount 1" and that "[s]imple assault is a lesser crime of assault by means likely to produce great bodily injury, charged in [c]ount 2."[2] It then told the jury, pursuant to former CALCRIM No. 3517, that "[i]t is up to you to decide the order in which you consider each crime and the relevant evidence. But I can accept a verdict of guilty of a lesser crime only if you found the defendant not guilty of the corresponding greater crime." The prosecutor also argued during closing that "you don't reach a verdict on simple battery unless you find [Whitecarter] not guilty of [c]ount 1, mayhem." She similarly stated that "you don't reach a verdict on simple assault unless you find him not guilty on [c]ount 2." Defense counsel did not object to either the instruction or the prosecutor's argument.

During deliberations, the jury submitted a written request asking for "more granularity surrounding the definition of [g]reat [b]odily [i]njury" and clarification as to the "definition of moderate harm." The trial court responded that it was "the jury's responsibility to determine where along the continuum it believes the harm becomes a significant or substantial physical

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

[2] With respect to count 2, the trial court instructed the jury that "[g]reat bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm."

injury rather than a moderate or minor one." On the next day of deliberations, the jury submitted a written request for readback of B.P.'s testimony "related to threats." Shortly thereafter, the jury wrote to the court: "We are deadlocked and at an impasse on greater and lesser charges." The jury then took a lunch break and continued to deliberate for approximately three hours that afternoon before informing the court that it had reached a verdict. At that point, the court had provided the jury with a readback of B.P.'s testimony but had not responded to the jury's claim of an impasse. The jury found Whitecarter guilty on all counts and found true the special allegation that he personally inflicted great bodily injury.

The trial court sentenced Whitecarter to an aggregate term of five years in prison. It designated count 2 as the principal term and imposed the lower term of two years, plus a consecutive term of three years for the section 12022.7 enhancement. The court stayed the imposition of sentence on count 1 under section 654 and imposed a concurrent term of two years on count 3. It awarded Whitecarter 509 days of custody credits. Whitecarter timely appealed.

B. Facts

On November 12, 2022, B.P. was working at a fast-food restaurant when she heard someone yelling at her co-worker's brother, I.B. She walked to the front counter and saw Whitecarter threatening to beat I.B. up for staring in his direction. She intervened and told Whitecarter that I.B. had special needs and did not know what he was doing. Whitecarter grew angry and told B.P. to "shut the fuck up" and that she was "a stupid bitch," and "a beaner and dirty Mexican."

B.P. called for help on her headset and her manager told her "to just tell [Whitecarter] to get out." B.P. did so, but Whitecarter got angrier and

punched her, causing her headset and glasses to fly off her head. The impact caused B.P. to fall onto a bench, but she immediately got up and punched Whitecarter back. The two exchanged more punches as Whitecarter hit B.P. twice in her right eye. B.P. recalled blood dripping from her eye onto her clothes. As other employees pulled them apart, Whitecarter told B.P. that he was "going to fucking kill [her]." B.P. believed him and feared for her life. She was taken to the hospital and was told that her right eye had ruptured. Her eye was then surgically removed.

## II. **DISCUSSION**

Whitecarter contends that the trial court committed prejudicial error because former CALCRIM No. 3517 provided to the jury did not comply with *Kurtzman*, which held that a court may not instruct a jury "not to 'deliberate on' or 'consider' " a lesser offense before reaching a verdict on the greater offense. (*Kurtzman, supra*, 46 Cal.3d at p. 225.) He further contends that the error was compounded by the prosecutor's misleading closing argument. The People counter that Whitecarter forfeited this claim by failing to object below to the court's instruction or the prosecutor's arguments. We reach the merits of the claim and find no error.

### A. Forfeiture

"Generally, a party may not complain on appeal about a given instruction that was correct in law and responsive to the evidence unless the party made an appropriate objection. [Citation.] But we may review any instruction which affects the defendant's 'substantial rights,' with or without a trial objection. [Citation.] 'Ascertaining whether claimed instructional error affected the substantial rights of the defendant necessarily requires an examination of the merits of the claim—at least to the extent of ascertaining whether the asserted error would result in prejudice if error it was.' " (*People*

4

*v. Ramos* (2008) 163 Cal.App.4th 1082, 1087.)

Here, Whitecarter did not object to either the jury instruction (former CALCRIM No. 3517) or the prosecutor's remarks.[3] On the contrary, defense counsel requested that the trial court instruct the jury with former CALCRIM No. 3517. Nonetheless, we exercise our discretion to reach the merits because the claimed error arguably affects Whitecarter's substantial rights. (See *People v. Hishmeh* (2020) 52 Cal.App.5th 46, 52 (*Hishmeh*).)

B. <u>Instructional Error</u>

"Under the acquittal-first rule, a trial court may direct the order in which jury verdicts are returned by requiring an express acquittal on the charged crime before a verdict may be returned on a lesser included offense." (*People v. Bacon* (2010) 50 Cal.4th 1082, 1110.) But it is error for the court to instruct a jury "not to 'deliberate on' or 'consider' " a lesser offense before reaching a verdict on the greater offense. (*Kurtzman*, *supra*, 46 Cal.3d at p. 335.) Instead, California law "simply restricts a jury from *returning a verdict* on a lesser included offense before acquitting on a greater offense [but] does not preclude a jury from *considering* lesser offenses during its deliberations." (*Id.* at pp. 324–325.)

We review de novo whether a jury instruction correctly states the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) When instructions are claimed to be ambiguous or unclear, "we inquire whether the jury was 'reasonably likely' to have construed them in a manner that violates the defendant's rights." (*People v. Rogers* (2006) 39 Cal.4th 826, 873.) "We look to the instructions as a whole and the entire record of trial, including the

---

[3] To the extent Whitecarter argues there was any prosecutorial misconduct, he forfeited the issue by failing to object below. (*People v. Gray* (2005) 37 Cal.4th 168, 217 ["defendant forfeited [his] claim of prosecutorial misconduct by failing to object on this ground at trial"].)

arguments of counsel." (*People v. Franco* (2009) 180 Cal.App.4th 713, 720.)

Here, the trial court did not err or mislead the jury by giving former CALCRIM No. 3517. The court told the jury: "It is up to you to decide the order in which you consider each crime and the relevant evidence. But I can accept a verdict of guilty of a lesser crime only if you found the defendant not guilty of the corresponding greater crime." Whitecarter argues that this instruction was misleading because it omitted the following language that was added to CALCRIM No. 3517 in March 2024, the same month as the trial: "You do not have to reach a verdict on the greater crime before considering a lesser crime." Although this addition further clarified the order of deliberations, Whitecarter fails to explain how former CALCRIM No. 3517 conflicts with *Kurtzman*. Indeed, the court expressly told the jury that it could decide "the order in which [to] consider each crime and the relevant evidence";[4] it did *not* tell the jury that it could not deliberate on the lesser included offenses before it reached a verdict on the greater offenses.

Whitecarter counters that the trial court's instruction was erroneous because it "misleadingly appears to apply to the multiple *charged* crimes" as opposed to the charged crimes and their lesser included offenses. We are unpersuaded. The court explained the concept of lesser included offenses immediately before instructing the jury with former CALCRIM No. 3517. It then made clear that "[s]imple battery is a lesser *crime* of mayhem" and that "[s]imple assault is a lesser *crime* of assault by means likely to produce great bodily injury." (Italics added.) There is no reasonable likelihood that the jury construed the court's instructions as prohibiting it from *considering* the lesser

---

[4] By contrast, in *Hishmeh*, the Court of Appeal found error because the trial court "twice told the jury it could not 'consider' the lesser included offenses unless it unanimously found defendant not guilty of [the greater offense]." (*Hishmeh, supra,* 52 Cal.App.5th at p. 53.)

6

offenses before reaching a verdict on the greater ones. (See *People v. Wilson* (2008) 44 Cal.4th 758, 803 [we "presume 'that jurors understand and follow the court's instructions' "].)

Nor did the prosecutor mislead the jury during her closing argument. Consistent with *Kurtzman*, the prosecutor simply told the jury that it should not reach a verdict on the lesser included offenses unless it found Whitecarter not guilty of the respective greater offenses. She did not state, much less suggest, that the jury could not *consider* the lesser offenses before reaching a verdict on the greater offenses. Accordingly, Whitecarter has not demonstrated error.

## C. Prejudice

Even if the instruction was erroneous, we find no prejudice.

When a trial court improperly instructs a jury regarding its ability to consider lesser included offenses before acquitting a defendant of the charged crime, we reverse only if the defendant establishes a reasonable probability that he or she would have received a more favorable result in the absence of the error. (*Kurtzman*, *supra*, 46 Cal.3d at p. 335 [applying harmless error standard established by *People v. Watson* (1956) 46 Cal.2d 818].)

Under this standard, there is no prejudice if the jury did, in fact, deliberate on both the greater and the lesser offenses before reaching a verdict despite any instructional error. (*Kurtzman*, *supra*, 46 Cal.3d at p. 335.) In *Kurtzman*, for example, our high court found no prejudice because the record showed that the jurors continued deliberating over both the greater and lesser charges despite the trial court's erroneous instruction "not to 'deliberate on' or 'consider' voluntary manslaughter unless and until it had unanimously agreed on second degree murder." (*Ibid*.) Indeed, the court found that the jury's "continued full and productive deliberations" naturally

7

resolved its initial deadlock and that it was "not reasonably probable [that the] jurors would have found defendant not guilty of second degree murder absent the court's erroneous comments." (*Id.* at p. 336.)

Here, the record establishes that the jury did, in fact, consider both the greater and the lesser offenses before reaching a verdict. In its third request to the trial court, the jury wrote: "We are deadlocked and at an impasse on greater and lesser charges." The jury could only have reached "an impasse on" the "lesser charges" if it had already deliberated on them. Thus, the record makes clear that the jury not only understood it had discretion to consider the offenses in any order, it actually exercised that discretion. (See *People v. Perez* (1989) 212 Cal.App.3d 395, 400 [any *Kurtzman* error was harmless when the jury's requests during deliberations evidenced that they considered both the greater and the lesser offenses].)

Nonetheless, Whitecarter argues that the "misleading version of [former CALCRIM No. 3517] may have given the jury the impression that they could give no meaningful consideration of the lesser offenses before rendering a verdict on the greater offenses." This argument is not only speculative but also makes no sense in light of the jury's last written request to the trial court. Indeed, the jury could only have been "deadlocked" on the "lesser charges" if it had already given meaningful consideration of those charges.

Whitecarter further argues the trial court's failure to respond to the third jury request exacerbated the prejudice created by the erroneous instruction. We disagree. The court's lack of response was not unusual under the circumstances because of the intervening lunch break and because the court had to provide the jury with a readback of B.P.'s testimony in response to its second request (which was made 22 minutes before the third

8

request).  After the readback, the jury took a break, continued deliberations, and reached a verdict less than 40 minutes later.  Accordingly, it is unlikely that the jury interpreted the court's lack of response as an indication that it should not consider the lesser included offenses before reaching a verdict on the greater offenses.  In any event, we do not see how the jury, in light of any purported ambiguity in former CALCRIM No. 3517, could interpret any delay by the court in responding to the jury's third request as a rebuke of its decision to deliberate on the lesser offenses before reaching a verdict on the greater offenses.

*Hishmeh* is inapposite.  In that case, the Court of Appeal found prejudicial error because "the trial court twice told the jury it could not 'consider' the lesser included offenses unless it unanimously found defendant not guilty of [the greater offense]" in response to the jury's comment during deliberations that "it was deadlocked 11 to one on the charged crimes." (*Hishmeh*, *supra*, 52 Cal.App.5th at p. 53.)  By contrast, the trial court in this case never prohibited the jury from considering the lesser included offenses. In fact, the court did not even talk to the jury after learning about the jury's deadlock.

## III.  <u>DISPOSITION</u>

The judgment is affirmed.

CHOU, J.

We concur.

JACKSON, P. J.
SIMONS, J.

9