Filed 10/6/14  P. v. Harmon CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>IVAN HARMON,<br><br>    Defendant and Appellant. | D064150<br><br><br>(Super. Ct. No. SCS245214) |

APPEAL from a judgment of the Superior Court of San Diego County, Francis M. Devaney, Judge.  Affirmed.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

I.

INTRODUCTION

A jury found Ivan Harmon guilty of one count of robbery (Pen. Code, § 211)[1] (count 1). In a separate case, Harmon pled guilty to assault with a deadly weapon on a custodial officer (§ 245.3) and second degree burglary (§ 459). The trial court sentenced Harmon to a stipulated aggregate sentence of five years in prison. The trial court also imposed a restitution fine in the amount of $1,200 in the robbery case.

On appeal, Harmon contends that the trial court provided an improper response to a question from the deliberating jury that prevented the jury from considering the lesser included offense of grand theft. Harmon also contends that the trial court violated his Sixth Amendment right to a jury trial by imposing a restitution fine based on a fact not found by the jury. We affirm the judgment.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *The People's evidence*

On January 19, 2011, 15-year-old Isaak W. was walking through a park in Chula Vista, wearing earbuds as he listened to music on an iPod. Harmon, who was holding a beer can, walked up to Isaak. When Isaak saw Harmon, he removed one of the earbuds. Harmon said to Isaak, "Do you know whose park this is? It's Otay Park."

---

[1]    Unless otherwise specified, all subsequent statutory references are to the Penal Code.

Harmon then pulled Isaak's other earbud from his ear, put his hand in Isaak's pocket,[2] grabbed the iPod, and said, "You think this is a game." Harmon gestured as if he were using a video game controller device. Harmon told Isaak that Harmon was known as "Robbery." Harmon then threw the earbuds to the ground and walked quickly away with Isaak's iPod. Isaak feared for his safety during the encounter.

After Harmon walked away, Isaak ran to a nearby liquor store and telephoned the police. Isaak provided the dispatcher with a physical description of the suspect.

Shortly thereafter, a responding police officer encountered Harmon walking in the vicinity of the park. During an ensuing search, the officer found an iPod in Harmon's pants.

Isaak, who was still in the area, approached the officer and identified Harmon as the person who had taken his iPod. Isaak began to cry as he told the officer what had happened.

B.    *The defense*

The defense did not present any witnesses. During closing argument, defense counsel argued that Harmon had not used force or fear to obtain the iPod.[3]

---

[2]    It is not clear from the record whether Harmon reached into a pocket on Isaak's shirt or shorts.

[3]    Defense counsel did not dispute that Harmon had taken Isaak's iPod, stating, "No one is saying that [Isaak] purposely gave up his iPod . . . ."

## DISCUSSION

A.  *The trial court did not commit reversible error by the manner in which it responded to the deliberating jury's question concerning how to proceed in light of the jury's deadlock on the greater offense of robbery*

Harmon contends that the trial court "prevented the jury from considering the lesser included offense [of grand theft] during deliberations." Specifically, Harmon maintains that the trial court erred in its response to a jury question concerning how the jury should proceed in the face of a deadlock on the greater offense of robbery by improperly ratifying the jury's misunderstanding that it was prohibited from deliberating on the lesser offense of grand theft until after it had reached a verdict on the greater offense of robbery.

1.  *Governing law and standard of review*

a.  *The law governing a trial court's duty to respond to a deliberating jury's question*

" 'When a jury asks a question after retiring for deliberation, "[s]ection 1138 imposes upon the court a duty to provide the jury with information the jury desires on points of law." ' " (*People v. Hodges* (2013) 213 Cal.App.4th 531, 539 (*Hodges*).)

Section 1138 provides:

> "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called."

" 'We review for an abuse of discretion any error under section 1138.' " (*Hodges, supra*, 213 Cal.App.4th at p. 539.)

        b.    *The law governing a jury's deliberations and verdicts on greater and lesser included offenses*

In *People v. Kurtzman* (1988) 46 Cal.3d 322, 324 (*Kurtzman*), a defendant who had been convicted of the greater offense of second degree murder claimed that the trial court erred in instructing the jury "that it must unanimously agree on whether defendant was guilty of second degree murder before 'considering' [the lesser included offense of] voluntary manslaughter." (*Id.* at p. 324.) The *Kurtzman* court concluded that the trial court had erred in so instructing the jury, reasoning that California law "restricts a jury from *returning a verdict* on a lesser included offense before acquitting on a greater offense [but] does not preclude a jury from *considering* lesser offenses during its deliberations." (*Id.* at pp. 324-325.)

Thus, pursuant to *Kurtzman*, "a trial court should not tell the jury it must first unanimously acquit the defendant of the greater offense before deliberating on or even considering a lesser offense." (*People v. Dennis* (1998) 17 Cal.4th 468, 536 (*Dennis*), citing *Kurtzman, supra*, 46 Cal.3d at p. 335.) The Supreme Court has repeatedly reaffirmed this aspect of *Kurtzman*. (See, e.g., *People v. Bacon* (2010) 50 Cal.4th 1082, 1110; *People v. Anderson* (2009) 47 Cal.4th 92, 114; *Dennis, supra*, at p. 536; *People v. Fields* (1996) 13 Cal.4th 289, 303-304 (*Fields*); *People v. Berryman* (1993) 6 Cal.4th 1048, 1077.)

CALCRIM No. 3517 is a standard jury instruction that informs the jury that "[i]t is up to you to decide the order in which you consider each crime and the relevant evidence," but that the court "can accept a verdict of guilty of a lesser crime only if you have found the defendant not guilty of the corresponding greater crime." (See also Judicial Council of Cal., Crim. Jury Instns. (2014) Bench Notes to CALCRIM No. 3517 ["The court may not control the sequence in which the jury considers the offenses," citing *Kurtzman, supra,* 46 Cal.3d at p. 330].)

2. *Factual and procedural background*

a. *The trial court's oral instructions concerning deliberations and the completion of verdict forms*

Although Harmon does not discuss the trial court's oral instructions to the jury in his brief, we note that in providing those instructions, the trial court paraphrased CALCRIM No. 3517 in a way that differs significantly from the written version of CALCRIM No. 3517 that the court provided to the jury.[4] Accordingly, we quote the trial court's oral instruction in full:

> "Now, let me describe for you that . . . new thing we just dropped on you; lesser included offense. Let me describe to you how you deal with it.
>
> "The defendant is charged with a greater crime of robbery. If you all find the defendant is not guilty of robbery, you must—you may then consider whether he is guilty of a lesser crime of grand theft if you are convinced beyond a reasonable doubt that the defendant is guilty of that crime. Defendant may not be convicted of both greater and lesser crimes.
>
> "In this case the greater crime is robbery and the lesser crime of robbery is grand theft. Now, here is how you address it.

---

4    On appeal, Harmon cites to the reporter's transcript, suggesting that the court read the written instruction to the jury verbatim.

6

"You will receive verdict forms. One is count one verdict robbery. One is count two lesser included offense of grand theft.

"You follow these instructions on how to address that.

"You address the first crime, greater crime, of robbery. If you all agree the defendant is guilty of the greater crime, you sign the verdict form and you don't address the lesser crime. You're done. You're finished. You find him guilty of the greater offense and you sign it. Do not complete the lesser crime. Come return both verdicts to court.

"When addressing the robbery charge, if you cannot agree upon a verdict unanimously, you must inform me and I'll give you further instructions on how to deal with that.

"Number three, if you all agree the People have not proven defendant guilty of the great[er] crime, you will then find him not guilty of that crime and then you address the lesser crime. And if you all agree the people have proven that he's guilty of the lesser crime, then you complete the verdict not guilty of the greater, guilty of the lesser, and return both verdicts.

"If all of you agree that the defendant is not guilty of the greater crime and you address the lesser crime and you also agree he is not guilty of the lesser crime, you will fill in not guilty of both. Greater and lesser.

"Finally, if you find defendant is not guilty of the greater crime you sign that verdict form and you address the lesser crime. If you can't agree on that lesser crime you let me know that and we'll address it further.

"So it's very simple. You address the greater crime. If you find the defendant guilty of it you have no further need to address the lesser crime. If you find the defendant not guilty of the greater crime, you must address the lesser crime. If you're stuck on the greater or the lesser crime, you can't agree, you let me know and we'll take further steps.

"And by the way, that is all addressed in these instructions. It sounds difficult sometimes when I read it out loud, but it's a simple thing. If any of you are mathematically inclined, have done flow charts in the past it's very simple. If yes, go here. No, go there. You're able to follow it pretty easily."

> b. *The trial court's written instructions concerning deliberations and the completion of verdict forms*

Before the jury retired to deliberate, the trial court provided the jury with written instructions, including the following modified version of CALCRIM No. 3517 concerning deliberations and the completion of verdict forms, in writing:

"If all of you find that the defendant is not guilty of a greater charged crime, you may find him guilty of a lesser crime if you are convinced beyond a reasonable doubt that the defendant is guilty of that lesser crime. A defendant may not be convicted of both a greater and lesser crime for the same conduct.

7

"Now I will explain to you which charges are affected by this instruction:

"Grand theft from the person is a lesser crime of robbery charged in Count 1.

"It is up to you to decide the order in which you consider each crime and the relevant evidence, but I can accept a verdict of guilty of a lesser crime only if you have found the defendant not guilty of the corresponding greater crime.

"You will receive verdict forms of guilty and not guilty for the greater crime and also verdict forms of guilty and not guilty for the lesser crime.  Follow these directions before you give me any completed and signed, final verdict form.  Return any unused verdict forms to me, unsigned.

"1. If all of you agree the People have proved that the defendant is guilty of the greater crime, complete and sign the verdict form for guilty of that crime.  Do not complete or sign any other verdict form.

"2.  If all of you cannot agree whether the People have proved that the defendant is guilty of the greater crime, inform me only that you cannot reach an agreement and do not complete or sign any verdict form.

"3.  If all of you agree that the People have not proved that the defendant is guilty of the greater crime and you also agree that the People have proved that he is guilty of the lesser crime, complete and sign the verdict form for not guilty of the greater crime and the verdict form for guilty of the lesser crime.

"4. If all of you agree the People have not proved that the defendant is guilty of the greater or lesser crime, complete and sign the verdict form for not guilty of the greater crime and the verdict form for not guilty of the lesser crime.

"5. If all of you agree the People have not proved that the defendant is guilty of the greater crime, but all of you cannot agree on a verdict for the lesser crime, complete and sign the verdict form for not guilty of the greater crime and inform me only that you cannot reach an agreement about the lesser crime."

c.      *The jury's question and the court's answer concerning deliberations and the completion of verdict forms*

On May 1, 2013, at approximately 2:49 p.m., after the court had orally instructed the jury and provided the jury with the written instructions, including the modified version of CALCRIM No. 3517, the jury commenced deliberations.  At approximately 4:05 p.m. that afternoon, the bailiff delivered the following note, signed by the jury foreperson, to the trial court:

8

"Deadlocked on count #1. Need advise [*sic*] as to whet[h]er we should proceed w/ count#2[5] or continue deliberations."

The trial court directed the jury to return to the courtroom. Once in the courtroom, the following colloquy occurred:

"The court: Who is the foreperson? (Juror No. 24)?

"Juror No. 24: Right here, Sir.

"The court: I received a note. Let me make sure I can read your writing. It's pretty easy to read. You say 'Deadlocked on count one. Need advice as to whether we should proceed with count two or continue deliberations.' [¶] Am I reading that correctly?

"Juror No 24: That's correct. But I would like to add that after the fact we read the instructions at the very last page,[6] we understand that we cannot proceed into count two unless—

"The court: Well, good. I was going to tell you. Well, my short answer is continue deliberations.

"Juror No. 24: Correct.

"The court: My long answer is, frankly, you got to give it more time.

"Juror No. 24: Yes."

Before excusing the jury for the remainder of the day, the court stated to the jury:

"The court: You know, I don't want to scare you, but we [have] had deliberations go for days and days and days. Doesn't happ[en] frequently, but it can sometimes depending on the case. And you all just went out an hour ago. So here is my advice. Why don't we all go home. Take a break [and] sleep on it. Think about it. Don't talk about it with anyone, but sleep on it. . . .

"So we'll come back tomorrow at 9:00. You will gather up and begin deliberations. And then as the morning goes on you can advise me if you have reached a verdict, if you think you are still deadlocked, and we'll take it from there.

---

5    It appears that the jury foreperson was referring to the lesser included offense to count 1 because the trial court had referred to the lesser included offense as count 2 during its oral instructions. It is undisputed that there is no count 2 in this case.

6    The modified version of CALCRIM No. 3517 referenced in part III.A.1.b., *ante*, was the last written instruction in the packet of jury instructions provided to the jury.

9

" [¶] . . . .[¶]

" . . . You've had some deliberations.  Now your wheels should be turning.  So I can't prevent you from deciding the case yet.  But, you know, start getting those thoughts together to exchange with each other tomorrow and come back fresh at 9:00 and give it a shot and we'll see where you go from there."[7]

The court then excused the jury for the evening.

---

7      After excusing the jury for the day, the court briefly discussed with the prosecutor and defense counsel what would occur with respect to the lesser included offense if the jury were to remain deadlocked on the greater offense and the court declared a mistrial. Neither the court nor counsel was entirely certain of the proper course to take in such an event.

In *People v. Anderson*, *supra*, 47 Cal.4th at page 114 the Supreme Court explained that the prosecutor has a choice to make in such a circumstance:

"When the jury . . . hangs on the more serious offense, the prosecution is put to a choice: It may either move for a mistrial and set the entire matter for a retrial [citations], or, if it wishes to accept a verdict on the lesser charge and forgo a chance to convict on the greater, the prosecution may ask the court to dismiss the greater charge in the interest of justice [citation]."

d.     *The jury's continued deliberations, request for a read back, and verdict*

The following morning, the jury resumed deliberations. At 9:35 a.m., the jury requested a read back of the entirety of Isaak's testimony. After the court reporter finished reading Isaak's testimony to the jury, the jury took a short break and then resumed deliberations. After a lunch break, at approximately 2:35 p.m., the jury reached a verdict of guilty on the greater offense of robbery.

3.     *Harmon has not demonstrated that any error committed by the trial court by the manner in which it responded to the jury's question was prejudicial*[8]

We need not determine whether the trial court's response to the jury's question constituted *Kurtzman* error, because we conclude that even if the court did commit error, any such error was harmless.[9]

---

[8]    We reject the People's unsupported contention that Harmon forfeited his claim on appeal by "acquiescing in the court's proposed response" to the jury's question. There is nothing in the record that indicates that Harmon acquiesced to the trial court's response to the jury's question.

[9]    As noted above, the trial court's oral instruction significantly differed from the written instruction that the court provided to the jury. The court's oral instruction *omitted* the key portion of CALCRIM No. 3517 that informs the jury that it is free to determine the order in which it considers the greater and lesser offenses and the evidence during deliberations: "It is up to you to decide the order in which you consider each crime and the relevant evidence. . . ." (CALCRIM No. 3517.) The trial court also repeatedly informed the jury that it was to first "address" the greater offense, and that if the jury found the defendant guilty of the greater crime, then the jury did not have to "address" the lesser crime. For example, the court stated:

> "So it's very simple. You address the greater crime. If you find the defendant guilty of it
> you have no further need to address the lesser crime. If you find the defendant not guilty
> of the greater crime, you must address the lesser crime . . . ."

11

a.    Kurtzman *error is rarely prejudicial*

*Kurtzman* instructional error requires reversal only where it is "reasonably probable that a different result would have occurred had the contested instructions not been given." (*Kurtzman, supra*, 46 Cal.3d at p. 335 [applying the standard of prejudice adopted in *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*)]; see also *People v. Berryman, supra*, 6 Cal.4th at p. 1078 [stating *Watson* standard of prejudice applies to *Kurtzman* instructional error].)

The Supreme Court has noted the "inherent difficulty in demonstrating prejudice" (*Fields, supra,* 13 Cal.4th at p. 309, fn. 7) stemming from *Kurtzman* error. (*Ibid.,* citing *People v. Berryman*, *supra*, 6 Cal.4th at p. 1078, fn. 7 [stating, "[I]t will likely be a matter of pure conjecture whether [an instruction that expressly prohibits a jury from deliberating on lesser included offenses until it acquits a defendant of the greater] had any effect, whom it affected, and what the effect was"].)  Indeed, although the doctrine has

---

The court also stated:

> "You address the first crime, greater crime, of robbery.  If you all agree the defendant is guilty of the greater crime, you sign the verdict form and you don't address the lesser crime.  You're done.  You're finished. . . ."

The trial court also suggested to the jury that it was to "consider" whether Harmon was guilty of a lesser crime only if it first found Harmon not guilty of the greater crime. Specifically, the court stated, "The defendant is charged with a greater crime of robbery. If you all find the defendant is not guilty of robbery, . . . you may then *consider* whether he is guilty of a lesser crime of grand theft if you are convinced beyond a reasonable doubt that the defendant is guilty of that crime." (Italics added.)
Although Harmon did not note in his briefing on appeal these distinctions between the trial court's oral and the written instructions, we have considered trial court's oral instruction to the jury in our resolution of Harmon's claim on appeal.

12

existed for more than a quarter century, Harmon has not cited, and our own research has

not uncovered, a single reported decision in which a reviewing court has concluded that

*Kurtzman* instructional error was prejudicial and thus required reversal.

For example, in *Kurtzman*, *supra*, 46 Cal.3d at page 336, the trial court expressly

forbade the jury from considering lesser included offenses until the jury had reached a

verdict on the greater offense.  The *Kurtzman* court described the challenged instructions,

and the sequence of deliberations, as follows:

> "[The trial court] . . . told the jury that to be sure they were 'doing this right': 'I am going to ask you to go back and deliberate on the question of murder in the first degree.  I want you to come back to me and tell me if you agree or disagree on that issue. . . . *Before you get to the other lesser included offenses*, I want to find out if you have unanimously agreed on the original charge, which is murder in the first degree. . . . [T]ell me what the status is on that one charge before we go to the lesser ones.'  The jury returned a verdict of not guilty as to first degree murder.
>
> "The judge then asked the jurors to go back and deliberate on the issue of murder in the second degree, and it soon became clear the jury was deadlocked by a vote of eight to four.  The jury posed questions to the court on the relationship between second degree murder and voluntary manslaughter.  At one point the judge, addressing the jury foreman, noted the jury seemed still to be considering manslaughter. He said: *'You understand that I wanted you to deliberate on that issue [second degree murder] and that issue alone?'* The judge said he questioned 'whether you should be able to deliberate' on voluntary manslaughter and reiterated: '. . . my understanding is that you were to—*I thought I instructed you to deliberate on second, in that area first.'*
>
> "Finally . . . after a weekend break, the jury returned with additional questions including: 'Can we find the defendant guilty of manslaughter without unanimously finding him not guilty of murder in the second degree?'  . . . [T]he judge wrote back on Monday afternoon: *'No, you must unanimously agree on the second degree murder offense before considering voluntary manslaughter.'*  Tuesday morning the jury returned a verdict of second degree murder." (*Kurtzman, supra*, at pp. 327-328, italics altered, fns. omitted.)

Despite the fact that the trial court erred in expressly prohibiting the jury from

deliberating on the lesser included offense until it had reached a unanimous verdict on the

greater offense, the Supreme Court concluded that the trial court's instructional error was

harmless, reasoning:

13

"Until the day before returning their verdict, jurors obviously continued to consider manslaughter, and it is not clear that they did not in fact do so thereafter.

"Certainly here there was no coercion of a single juror or a small minority of jurors. . . . The reported split was eight to four and it totally shifted following the weekend hiatus and further deliberations. Given this pattern of continued full and productive deliberations and given the evidence of defendant's guilt, it is not reasonably probable jurors would have found defendant not guilty of second degree murder absent the court's erroneous comments." (*Kurtzman, supra,* 46 Cal.3d at pp. 335-336.)

In *People* v. *Perez* (1989) 212 Cal.App.3d 395, the People charged the defendant with second degree murder arising out of a drunk driving incident, and the trial court instructed the jury on a series of lesser included offenses, including vehicular manslaughter. (*Id.* at p. 398-399.) During deliberations, the jury informed the court that it was deadlocked. (*Id.* at p. 399.) In response, the trial court instructed the jury, "I think you're on the right track, in that you must resolve count I, the second degree charge, before you can consider the other charges. And that's only if you consider a not guilty as to count I. If you consider—if you can't resolve that, of course, that precludes you from handling any of the lesser offenses." (*Ibid.*)

Applying *Kurtzman*, the *Perez* court concluded, "The [trial] court's statement to the jury that they could not 'consider' lesser offenses before acquitting on the second degree murder count was error." (*Perez, supra*, 212 Cal.App.3d at p. 399.) Despite this error, the *Perez* court concluded that "given the possibly ambiguous nature of the court's statement which is at issue,[10] the absence of any indication that the statement thwarted

---

10      The *Perez* court reasoned that the court's use of the term "consider" might have meant "return a verdict and not just to consider." (*Perez, supra*, 212 Cal.App.3d at p. 400.) The *Perez* court added, "[T]he [trial] court did not attempt to restrict the jury from

14

the continuation of an appropriately full pattern of deliberations, and the substantial

evidence of second degree murder which appellant does not contest, the court's use of the

word 'consider' was harmless." (*Id.* at p. 400.)

---

considering evidence of lesser included offenses in a clear, forceful and repeated
manner." (*Ibid.*)

b. *Harmon has not demonstrated prejudicial error*[11]

In both *Kurtzman* and *Perez*, a trial court expressly told a deadlocked jury that it was not permitted to "consider" the lesser included offense, unless it first found the defendant not guilty of the greater offense. (*Kurtzman, supra*, 46 Cal.3d at pp. 327-328; *Perez, supra*, 212 Cal.App.3d. at p. 399.) In both cases, reviewing courts concluded that the error was harmless. (*Kurtzman, supra,* at pp. 335-336; *Perez, supra*, at pp. 399-400.) In this case, the jury was given a written instruction that *properly* informed the jurors that "It is up to you to decide the order in which you consider each crime and the relevant evidence." During a colloquy with the trial court concerning the question that the jury had submitted to the court, the jury foreman stated on the record that the jury had read the relevant written instruction (CALCRIM No. 3517). Although the trial court's oral instruction failed to properly convey this principle to the jury, and the court's response to the jury's foreman's statements concerning the written instruction are ambiguous, the error of which Harmon complains on appeal[12] is far less clear than were the errors in *Kurtzman* and *Perez*. (See *Perez, supra*, at p. 400 [concluding *Kurtzman* error was

---

[11]    While Harmon suggests that it is the *People's* burden to establish that *Kurtzman* error is harmless, it is well established that it is the *defendant's* burden under *Watson* to demonstrate prejudice. (See, e.g., *People v. Hernandez* (2011) 51 Cal.4th 733, 746 [referring to "the *defendant's* burden under *Watson, supra,* 46 Cal.2d at page 837, to establish a reasonable probability that error affected the trial's result," italics added].)

[12]    We emphasize that Harmon makes no claim on appeal with respect to the trial court's oral instruction.

harmless in part because of the "possibly ambiguous nature of the court's statement . . . at issue"].)

Further, as in *Kurtzman,* after the trial court provided an incorrect instruction to the jury, the record reflects that the jury continued to deliberate and consider the evidence. Specifically, the jury requested a read back of Isaak's testimony and deliberated for several more hours before reaching a verdict. In addition, as in *Kurtzman*, there is no evidence of "coercion of a single juror or a small minority of jurors." (*Kurtzman, supra,* 46 Cal.3d at p. 336.)

Moreover, as in *Perez*, there is an "absence of any indication that the [trial court's] statement thwarted the continuation of an appropriately full pattern of deliberations." (*Perez, supra*, 212 Cal.App.3d at p. 400; see also *Kurtzman, supra,* 46 Cal.3d at p. 336 [concluding instruction error did not require reversal where it was "not clear" whether jury had ceased deliberating on lesser included offense].) Even assuming that the jury interpreted the trial court's instructions to preclude it from deliberating on the lesser included offense of grand theft unless it unanimously agreed that Harmon was not guilty of the greater offense, there is no evidence that the erroneous instruction affected the verdict on the greater offense. In particular, deliberations on the lesser included offense would *not* have included a discussion of the primary issue in the case, i.e. whether Harmon obtained the iPod through force or fear.

Under these circumstances, it is "a matter of pure conjecture" (*People v. Berryman*, *supra*, 6 Cal.4th at p. 1078, fn. 7) whether the trial court's ambiguous

17

response[13] to the jury's question "had any effect" (*ibid.*) on the ultimate verdict reached. Accordingly, we conclude that Harmon has failed to demonstrate that any *Kurtzman* error committed by the trial court requires reversal.

B.    *The trial court did not violate Harmon's Sixth Amendment right to a jury trial by imposing a $1,200 restitution fine*

Harmon contends that the trial court violated his Sixth Amendment right to a jury trial under *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) and its progeny by imposing a $1,200 restitution fine pursuant to section 1202.4.   Specifically, Harmon maintains that the imposition of a fine greater than the $200 statutory minimum violates *Apprendi* because section 1202.4, subdivision (d) "prohibits [a] court from increasing the fine above the minimum unless it makes an additional factual finding, i.e. that the defendant has the ability to pay the increased fine."  (Italics omitted.)

Harmon's contention raises a question of law.  We review questions of law de novo.  (See e.g., *People v. Butler* (2003) 31 Cal.4th 1119, 1127.)

---

[13]    As noted above, Harmon's claim on appeal is based on the following colloquy:

> "The court:  I received a note. Let me make sure I can read your writing.  It's pretty easy to read.  You say 'Deadlocked on count one.  Need advice as to whether we should proceed with count two or continue deliberations.' [¶]  Am I reading that correctly?
>
> "Juror No 24: That's correct. But I would like to add that after the fact we read the instructions at the very last page, we understand that we cannot proceed into count two unless—
>
> "The court: Well, good.  I was going to tell you.  Well, my short answer is continue deliberations. "

1.      *The applicable restitution fine statute*

Former section 1202.4, the restitution fine statute in effect at the time Harmon

committed the charged offense, provided in relevant part:

"(a)(1) It is the intent of the Legislature that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime.

"[¶] . . . . [¶]

"(3) The court, in addition to any other penalty provided or imposed under the law, shall order the defendant to pay both of the following:

"(A) A restitution fine in accordance with subdivision (b).

"[¶] . . . . [¶]

"(b) In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record.

"(1) The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense, but shall not be less than two hundred dollars ($200), and not more than ten thousand dollars ($10,000), if the person is convicted of a felony, and shall not be less than one hundred dollars ($100), and not more than one thousand dollars ($1,000), if the person is convicted of a misdemeanor.

"(2) In setting a felony restitution fine, the court may determine the amount of the fine as the product of two hundred dollars ($200) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted.

"(c) The court shall impose the restitution fine unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record. A defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a restitution fine. Inability to pay may be considered only in increasing the amount of the restitution fine in excess of the two hundred-dollar ($200) or one hundred-dollar ($100) minimum. . . . .

"(d) In setting the amount of the fine pursuant to subdivision (b) in excess of the two hundred-dollar ($200) or one hundred-dollar ($100) minimum, the court shall consider any relevant factors, including, but not limited to, the defendant's inability to pay, the seriousness and gravity of the offense and the circumstances of its commission, any economic gain derived by the defendant as a result of the crime, the extent to which any other person suffered any losses as a result of the crime, and the number of victims involved in the crime. Those losses may include pecuniary losses to the victim or his or her dependents as well as intangible losses, such as psychological harm caused by the crime. Consideration of a defendant's inability to pay may include his or her future earning capacity. A defendant shall bear the burden of demonstrating his or her inability to pay. Express findings by the court as to the factors bearing on the amount of the fine

19

shall not be required. A separate hearing for the fine shall not be required." (Stats. 2010, ch. 351, § 9.)

2.       Apprendi *and its progeny*

In *Apprendi, supra,* 530 U.S. at page 490, the United States Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." However the *Apprendi* court made clear that, "[N]othing in [the common law and constitutional history] suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to the offense and offender—in imposing a judgment *within the range* prescribed by statute." (*Id.* at p. 481.) The United States Supreme Court explained in *Blakely v. Washington* (2004) 542 U.S. 296, 303 (*Blakely*) that, "[The] 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (Italics omitted.)

3.       *Imposition of a restitution fine greater than the statutory minimum but less than the statutory maximum imposed under section 1202.4 does not violate* Apprendi *or its progeny*

In *People v. Kramis* (2012) 209 Cal.App.4th 346 (*Kramis*), the Court of Appeal concluded that a restitution fine greater than the statutory minimum imposed pursuant to a similar version of former section 1202.4, subdivision (b)(1) (Stats. 2008, ch. 468, § 1)[14] did not violate *Apprendi* because a trial court may impose such a fine without

_____

[14]     The version of section 1202.4 at issue in *Kramis* did not differ in any material respect from the version of section 1202.4 at issue in this case.

making additional factual findings beyond those found by the jury. (See also *People v. Urbano* (2005) 128 Cal.App.4th 396, 406 [rejecting contention that $3,800 restitution fine violated *Blakely* because "$3,800 fine is within the range authorized by statute"].)

The *Kramis* court reasoned:

> "Under the applicable version of section 1202.4, subdivision (b)(1), absent compelling and extraordinary circumstances, the trial court was required to impose a restitution fine in an amount between $200 and $10,000. The $10,000 section 1202.4, subdivision (b) restitution fine imposed in the present case was within that statutory range. The trial court did not make any factual findings that increased the potential fine beyond what the jury's verdict—the fact of the conviction—allowed. Therefore, *Apprendi* and its progeny do not preclude its imposition." (*Kramis*, *supra*, 209 Cal.App.4th. at pp. 351-352.)

We agree with the *Kramis* court. Former section 1202.4, subdivision (d) states, "Express findings by the court as to the factors bearing on the amount of the fine *shall not be required*." (Italics added.) (Stats. 2010, ch. 351, § 9.) Further, our Supreme Court has made clear that a trial court retains discretion to impose a restitution fine of up to $10,000 *without* making any additional express factual findings beyond those found by the jury. (See *People v. Avila* (2009) 46 Cal.4th 680, 729 ["[A] fine in any amount greater than the statutory minimum, and up to $10,000, is subject to the court's discretion. (§ 1202.4, subds. (b)(1), (d).)[15] Moreover . . . a defendant bears the burden of demonstrating his inability to pay, and express findings by the court as to the factors bearing on the amount of the fine are not required"].) Thus, the imposition of a restitution fine in an amount of up to $10,000 is within the trial court's discretion and

---

15      The *Avila* court was discussing the same version of section 1202.4 that was at issue in *Kramis* (Stats. 2008, ch. 468, § 1), and which does not materially differ from that at issue in this case.

21

does not require the trial court to make additional factual findings concerning a defendant's ability to pay.[16]

Accordingly, we conclude that the trial court did not violate Harmon's Sixth Amendment right to a jury trial by imposing a $1,200 restitution fine.

IV.

DISCUSSION

The judgment is affirmed.

AARON, J.

WE CONCUR:

McCONNELL, P. J.

NARES, J.

---

[16] We reject Harmon's contention that "[c]ase law solidly supports the conclusion that . . . a finding of the defendant's ability to pay is *required* to make him eligible for a fine above $200." (Italics added, citing *People v. Richardson* (2008) 43 Cal.4th 959 (*Richardson*).) In *Richardson*, the Supreme Court was discussing former Government Code section 13967, which, at the time, "*condition[ed]* imposition of such a fine on a defendant's ability to pay." (*Richardson, supra*, at p. 1038, italics added.) In contrast, former section 1202.4, subdivision (d) does not require any express findings concerning the factors bearing on the amount of the fine to be imposed. (See *People v. Avila*, *supra*, 46 Cal.4th at p. 729.)