Filed 8/26/25  P. v. Uc CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>ALBERTO UC,<br><br>　　　Defendant and Appellant. | A170520<br><br>(San Francisco City & County<br>Super. Ct. Nos. 21001364,<br>21007696, 22014976) |

A jury convicted defendant Alberto Uc of numerous crimes, including attempted burglary of one residence and completed burglaries of two others, and the trial court sentenced him to 10 years in prison.  On appeal, Uc claims the court erred under *People v. Kurtzman* (1988) 46 Cal.3d 322 (*Kurtzman*) by instructing the jury that it could not consider a lesser included offense of one of the burglary charges before it resolved the greater charge.  He also claims, and the Attorney General concedes, that a pair of two-year enhancements imposed under Penal Code[1] section 12022.1 (bail enhancements) are invalid in light of intervening authority establishing a right to a jury trial on such enhancements.

---

[1] All further statutory references are to the Penal Code.

We conclude that although *Kurtzman* error occurred as to one of the burglary counts, it was harmless. We also accept the Attorney General's concession that the bail enhancements cannot stand. Thus, we affirm, except we reverse the bail enhancements and remand for further proceedings.[2]

I.
FACTUAL AND PROCEDURAL
BACKGROUND

Uc was convicted of crimes arising from separate incidents at three San Francisco residences. We discuss the incidents in chronological order.

*A.        Attempted Burglary on Balboa Street (February 2021)*

Around 4:30 a.m. on February 5, 2021, the resident of a house on Balboa Street was awakened by "a loud cracking sound of . . . metal breaking through wood." He went to the window and "saw that it was [his] garage that was being broken into," as there was someone standing "right next to [his] car in front of [the] garage." The resident could not see the person's features, but he took a photograph that showed "pretty distinctly the clothing [the person] was wearing."

The resident called 911 to report that "somebody was trying to break into [his] house" with "what sounded like a crowbar." During the call, which was played for the jury, the resident described the person as a "skinny" male wearing "a gray or black sweatshirt with a hoodie." The resident testified that he noticed the man's shoes were black and white.

The resident also reported to 911 that he saw the man walk away on Balboa Street toward Eighth Avenue. At one point, the resident heard "what

_____

[2] The parties also agree that the abstract of judgment inaccurately reflects that one of the bail enhancements was imposed under section 667.5, subdivision (c)(21), instead of section 12022.1, subdivision (b). In preparing a new abstract of judgment on remand, the trial court shall ensure that this mistake is not repeated.

2

sounded like a crowbar hitting the ground," and the man turned around and picked something up before continuing to walk away. When the resident later inspected his garage door, there was a large hole in it that was not there before.

After hearing a dispatch about the attempted burglary, a police officer on patrol in the area quickly located Uc on Eighth Avenue, about a block away from the Balboa Street residence. Uc "was wearing a dark jacket, did have a gray hoodie," and was carrying a black bag. Believing Uc fit the suspect's description, the officer detained him. Uc had a crowbar on his person, and his bag contained bolt cutters, a mallet, a chisel, and a screwdriver.

The police took the resident to the location where Uc was detained to conduct a "cold show," a field identification procedure. The resident identified Uc as the person he saw trying to break into the garage, based on Uc's clothing, shoes, "build[,] and size." Uc was arrested but released from custody after being charged.

B.     *Burglary on Arguello Boulevard (August 2021)*

The parties stipulated that as a condition of his release after his February 2021 arrest, Uc "was required to wear an ankle monitor that tracked his movement with GPS, and on August 5, 2021, he was wearing the ankle monitor." Early on the morning of August 5, police officers began tracking Uc's movements as part of a "burglary surveillance operation." For a while, Uc walked around the Richmond District, sometimes "us[ing] a flashlight to illuminate garage doors" and other times using his cell phone.

At 3:35 a.m., the sergeant conducting the operation was notified that Uc "appeared to be inside [a] building" on Arguello Boulevard. Upon arriving at the address, an apartment building, the sergeant saw that the building's

3

garage door was partially open and "a piece of mail [was shoved] in the door jam[b]" of the front door to hold it open.  The sergeant also heard "a loud bang."  Uc then left the building, about 20 minutes after the GPS first showed he was at that location.  The sergeant observed him walk away down the street, again "using his flashlight to illuminate garage doors of the houses" he passed.

The apartment building that Uc entered had three residential floors, which were accessible by the stairs or elevator on the ground floor.  No key or passcode was required to access the stairs or elevator from the lobby.  The building's garage, which was not open to the public, was accessible from the lobby.  At the time, the building's front door lock was functioning, but the door between the lobby and the garage did not have a lock.  The building's manager testified that the only ways to access the garage were by using the garage door, using the lobby door, or "cross[ing] a few fences from [a different] street" and entering through an open area at the back of the garage.

The apartment building's surveillance cameras recorded an unknown person in various areas, including by the garage's bike racks and in the lobby.  The footage, which was played for the jury, also showed the person take a letter from above a mailbox in the lobby and place it in the front door.  None of the apartments were broken into, and no residents reported any lost or damaged property.

Soon after Uc left the apartment building, the police detained him.  He had a backpack and was carrying a flashlight on his person.  The backpack contained a power drill, a small crowbar, two sets of bolt cutters, a knife wrapped in a t-shirt, and two credit cards not in Uc's name.  Uc stated that he was on his way to see a friend and give him the backpack.  Uc admitted he

4

entered the apartment building but claimed he did so "to take recyclables," even though he did not ultimately do so.

## C. *Burglary on Jefferson Street (December 2022)*

Around 2:00 a.m. on December 9, 2022, a special police officer hired to patrol the Marina neighborhood noticed a house on Jefferson Street had its garage door open. There was a hole in the garage door's glass and broken glass on the ground. After confirming no one was inside the garage, the officer notified the homeowner of the break-in. The homeowner's wife and children were also in the house.

The homeowner went to the garage and noticed that one of his electric bicycles was missing. He estimated its value at $4,000. Footage from the house's surveillance cameras, which was played for the jury, showed a person the homeowner did not know wearing a blue top inside the garage. There was a metal rod attached to the garage door's emergency release cord, suggesting the stranger gained access by pulling that cord and manually pushing up the door.

About an hour later, after reviewing the surveillance footage, the police detained Uc because he matched the suspect's appearance. Uc had on "a white hoodie underneath a bluish gray long-sleeved shirt." He was wearing a backpack, which contained a "make[]shift window[-]breaking item, a multi-tool flashlight, screwdrivers, . . . a pick[-]looking thing[,] and a wire cutter." Uc also possessed "four ID[-]type cards," none of which were in his name.

## D. *Procedural History*

Uc was charged in separate cases for (1) the Balboa Street incident (no. 21001364), (2) the Arguello Boulevard incident (no. 21007696), and (3) the Jefferson Street incident (no. 22014976). In July 2023, after the trial

court granted the prosecution's motion to consolidate the three cases, a consolidated information was filed.

For the Balboa Street incident, Uc was charged with a felony count of attempted first degree burglary and misdemeanor counts of vandalism and possession of burglary tools. For the Arguello Boulevard incident, he was charged with a felony count of first degree burglary—count four, which is at issue in his claim of instructional error—and misdemeanor counts of possession of burglary tools and petty theft of lost property (access cards). Finally, for the Jefferson Street incident, he was charged with felony counts of first degree burglary and grand theft (e-bike) and misdemeanor counts of possession of burglary tools and petty theft of lost property (identification documents).[3] This burglary was alleged to be a violent felony because Uc committed it when another person was in the residence, and it was alleged as to each felony count that Uc was released from custody on bail or his own recognizance when he committed the crime.[4] Finally, the information also alleged that Uc was ineligible for probation based on three prior convictions of second degree burglary.[5]

The jury acquitted Uc of both counts of petty theft and found him guilty of the remaining charges. It also found true that he committed the Jefferson Street burglary while another person was in the residence. In March 2024, after finding Uc ineligible for probation, the trial court sentenced him to

---

[3] The charges were brought under sections 459 (burglary) and 664 (attempted burglary), 594, subdivision (b)(1) (vandalism), 466 (possession of burglary tools), 485 (petty theft), and 487, subdivision (a) (grand theft).

[4] The violent-felony allegation was made under section 667.5, subdivision (c)(21), and the bail allegations were made under section 12022.1, subdivision (b).

[5] This allegation was made under section 1203, subdivision (e)(4), based on 2016, 2017, and 2019 convictions under section 459.

10 years in prison. The sentence was composed of a term of four years for the Arguello Boulevard burglary and consecutive terms of two years for the bail enhancement accompanying that offense, 16 months for the Jefferson Street burglary, two years for the bail enhancement accompanying that offense, and eight months for the Balboa Street attempted burglary. The court imposed concurrent terms of three months in jail for each misdemeanor conviction and stayed punishment for the grand theft.

II.

DISCUSSION

*A.    Uc Is Not Entitled to Relief on His Claim of* Kurtzman *Error.*

Uc claims the trial court violated *Kurtzman* by giving the jurors "a de facto instruction" on count four, regarding the Arguello Boulevard incident, "that they were not permitted to even consider [a] lesser included trespass offense" on which they were instructed "before they resolved the greater charge" of burglary. Although we agree that instructional error occurred, we conclude that it was harmless.

1.    Additional facts

The jury was instructed under CALCRIM No. 2932 on trespass by entering a dwelling as a lesser included offense of the Arguello Boulevard burglary charged in count four. (See § 602.5, subd. (a).) The trial court also instructed the jury under CALCRIM No. 3515 that "each of the counts charged in this case is a separate crime. [¶] You must consider each count separately and return a separate verdict for each one, except for count Four which has a lesser included offense for you to consider; how to handle [the] verdict forms for count Four and its lesser included offense will be explained separately."

The trial court then explained how to evaluate count four in the challenged instruction, an oral instruction that was not included in the

7

written instructions. The challenged instruction's source is unclear, as not all of the preceding discussion of jury instructions was reported. The challenged instruction provided:

> "[A]s to Count 4, you've heard the references. You're going to get two verdict form[s] for Count 4. One for the charged offense of residential burglary, and one for the lesser included offense of trespass. When you're discussing the case and all the issues for all the counts, you can discuss in any order you want. Okay? You can start at the beginning, you can start at the end, you can start in the middle. You can take on Count 4 at any point you choose. But here's where you need to listen carefully. When you start to vote, if you decide unanimously that Mr. Uc is guilty of the charged residential burglary in Count 4, you'd fill that in, sign it, and date it, your foreperson, and you never reach the lesser included offense and its verdict form because you've resolved Count 4 with the greater charge. . . .

> "If in your voting on Count 4, you cannot reach a unanimous decision. . . . You are split. You're hung. That means you can't resolve the greater charge. And if you can't resolve the greater charged offense in Count 4, you never reach the lesser offense of trespass. You only reach the lesser offense of trespass for Count 4, if, first, you have unanimously voted not guilty as to the charged residential burglary. . . .

> "I'll say it again. Only if you unanimously agree that Mr. Uc is not guilty of [the] charged residential burglary for Count 4, then turn your attention to the lesser trespass. And then you approach the lesser trespass at that point the way you would any other count. Have your discussion and have your vote. If you're unanimous for guilt, you fill in guilty, sign and date. If you're unanimous for not guilty, put in not guilty, sign and date. And if when you're discussing and voting on trespass, you cannot reach unanimity, you don't sign and date the form because as I told you, you only have a verdict if you unanimously agree either way."

After the jurors began deliberating, the trial court indicated that the next day the parties could memorialize their objections to the jury

8

instructions. But no further discussion of the instructions was reported, and our record does not otherwise indicate that one occurred.

### 2. Analysis

Under the "acquittal-first rule," when a jury is instructed on a lesser included offense, it " 'must acquit of the greater offense before returning a verdict on the lesser included offense.' " (*People v. Anderson* (2009) 47 Cal.4th 92, 114.) The rule is meant to enforce double jeopardy protections by avoiding "retrial when the jury agrees that the greater offense was not proven but cannot agree on a lesser included offense. Without the rule, a general declaration of mistrial would disguise the fact that the jury agreed the defendant was not guilty of the greater offense, making the defendant subject to retrial on both the greater and lesser offenses." (*Ibid.*)

In *Kurtzman*, our state Supreme Court clarified that the acquittal-first rule dictates the order in which a jury returns verdicts, but the jury may "consider or discuss the offenses in any order it chooses." (*People v. Anderson*, *supra*, 47 Cal.4th at p. 114; *Kurtzman*, *supra*, 46 Cal.3d at pp. 329–330.) The Supreme Court thereby "rejected a strict acquittal-first rule, applied in some states, 'under which the jury must acquit of the greater offense before even considering lesser included offenses.' " (*People v. Olivas* (2016) 248 Cal.App.4th 758, 773 (*Olivas*).) Thus, it is error to instruct the jury that it may not even consider a lesser included offense before it reaches a verdict on the greater offense. (*Kurtzman*, at pp. 329–330; *Olivas*, at p. 774; *People v. Perez* (1989) 212 Cal.App.3d 395, 399.) " 'The danger to the defendant of [an instruction] requiring acquittal of the greater offense before the lesser offense is considered is clear: "If the jury is heavily for conviction on the greater offense, dissenters favoring the lesser may throw in the sponge rather than cause a mistrial that would leave the defendant with no

9

conviction at all, although the jury might have reached sincere and unanimous agreement with respect to the lesser charge." ' " (*People v. Hishmeh* (2020) 52 Cal.App.5th 46, 54 (*Hishmeh*).)

We review claims of instructional error de novo. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579; *Olivas, supra*, 248 Cal.App.4th at p. 772.) In doing so, we view the challenged instruction " 'in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner.' " (*Mitchell*, at p. 579; *People v. Taylor* (2018) 19 Cal.App.5th 1195, 1205.)

The Attorney General contends that Uc forfeited his claim. Since not all discussions below of the jury instructions were reported, it is unclear whether Uc in fact objected to the challenged instruction. Although it is generally an appellant's burden to show that an issue was preserved (see *People v. Martinez* (2017) 10 Cal.App.5th 686, 728), we will consider the claim on the merits because Uc argues that the error violated his substantial rights. (§ 1259; see, e.g., *Hishmeh, supra*, 52 Cal.App.5th at p. 52 [considering *Kurtzman* claim on merits despite failure to object]; *Olivas, supra*, 248 Cal.App.4th at p. 772 [same].)

We begin by noting that although neither party raises the issue, trespass is actually a lesser *related* offense of burglary. (*People v. Foster* (2010) 50 Cal.4th 1301, 1343; *People v. Sigur* (2015) 238 Cal.App.4th 656, 667.) A defendant is not entitled to instructions on lesser related offenses, which require " 'mutual assent of the parties.' " (*People v. Alvarez* (2019) 32 Cal.App.5th 781, 790; *People v. Birks* (1998) 19 Cal.4th 108, 112–113.) But the record does not show any objection to the trespass instruction, which the defense apparently requested, and it seems the trial court and parties all mistakenly believed trespass was a lesser included offense of burglary.

10

Ultimately, this discrepancy does not affect our analysis of whether error occurred: Once a court chooses, rightly or wrongly, to give an acquittal-first instruction, we see no reason why prohibiting discussion of a lesser related offense before the jury reaches a verdict on the greater offense would be any less problematic than the same prohibition as to a lesser included offense.

Uc identifies three portions of the challenged instruction, which we italicize in the following discussion, that he claims constituted "obvious *Kurtzman* error." We disagree with him regarding the first two portions. The first portion, in the instruction's first paragraph, directed the jury, "When you start to vote, if you decide unanimously that Mr. Uc is guilty of the charged residential burglary in Count 4, you'd fill that in, sign it, and date it, your foreperson, and you *never reach* the lesser included offense and its verdict form because you've resolved Count 4 with the greater charge." (Italics added.) This sentence clearly addresses filling out verdict forms, however, and in context the directive not to "reach the lesser included offense and its verdict form" did not preclude the jury from merely discussing the lesser offense first.

Likewise, the next portion of the instruction to which Uc objects, in the instruction's second paragraph, does not address the order of the jury's deliberations. This portion instructed the jury that if it could not "resolve the greater charged offense in Count 4"—meaning it could not "reach a unanimous decision" when "voting on" that offense—"you *never reach* the lesser offense of trespass. You *only reach* the lesser offense of trespass for Count 4, if, first, you have unanimously voted not guilty as to the charged residential burglary." (Italics added.) Again, in context, the directions about "reaching" the lesser offense are more naturally interpreted to refer to voting on it and filling out its verdict form, not considering it.

11

We agree with Uc, however, that the final portion of the challenged instruction improperly conveyed to the jury that it could not even discuss trespass before it reached a verdict on burglary. In its final paragraph, the instruction directed the jury, "*Only* if you unanimously agree that Mr. Uc is not guilty of [the] charged residen[tial] burglary for Count 4, then *turn your attention to* the lesser trespass." (Italics added.) Had the instruction stopped there, we might conclude that the italicized language was most reasonably read as still referring to voting and completing a verdict form, as opposed to considering the lesser charge at all. But the instruction continued, "And then you approach the lesser trespass at that point the way you would any other count. Have your discussion and have your vote. . . . And if when you're discussing and voting on trespass, you cannot reach unanimity, you don't sign and date the form." We conclude there is a reasonable likelihood the jury understood this to mean it should not even "discuss" the lesser offense unless it found Uc not guilty of the greater offense, in violation of *Kurtzman*.

Nor did anything else in the record serve to correct this likely misunderstanding. Notably, the trial court did not instruct the jury under CALCRIM No. 3517, which the Attorney General agrees is the standard instruction on deliberating and completing verdict forms for a greater offense and lesser offense that would apply here. In addition to addressing the order in which the forms should be completed, CALCRIM No. 3517 provides, "It is up to you to decide the order in which you *consider* the greater and lesser crimes and the relevant evidence. You do not have to reach a verdict on the greater crime before *considering* a lesser crime." But for unknown reasons, the challenged instruction was given instead, and the jurors did not receive CALCRIM No. 3517's clear directive that they could discuss the lesser offense before reaching a verdict on the greater offense.

The closing arguments also did not clarify the issue. Uc argues that in fact, the prosecutor's argument only compounded the problem. On rebuttal, the prosecutor told the jury, "[T]he only way to render a verdict on [trespass] is if you unanimously agree that [Uc] is not guilty of the burglary at Arguello [Boulevard]. Suffice to say, . . . the People's position . . . [is] that you should never need to *consider* a trespass." (Italics added.) It is true that *Kurtzman* and subsequent cases have held that instructions that the jury cannot "consider" a lesser included offense before reaching a verdict on the greater are erroneous. (*Kurtzman*, *supra*, 46 Cal.3d at p. 324; *Hishmeh*, *supra*, 52 Cal.App.5th at pp. 48, 51; *Olivas*, *supra*, 248 Cal.App.4th at p. 774.) But we do not think that the presence or absence of the word "consider" in a given instruction is determinative. Since the prosecutor had just told the jury that it could not "render a verdict" on the lesser offense unless it found Uc guilty of the greater, the statement that the jury would "never need to consider" the lesser offense could be read to refer to reaching a verdict, not mere discussion. Conversely, the challenged instruction does not contain the word "consider," yet it can be reasonably interpreted as precluding the jury from discussing trespass before reaching a verdict on burglary. Although we thus do not view the prosecutor's argument as reinforcing the error in the challenged instruction, it did not counteract the error either.

Having determined that the challenged instruction violated *Kurtzman*, we turn to whether the error requires reversal. The parties disagree on the applicable standard for assessing prejudice. *Kurtzman* asked whether it was reasonably probable the defendant would have obtained a better result absent the error under *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). (*Kurtzman*, *supra*, 46 Cal.3d at p. 335; see *People v. Berryman* (1993) 6 Cal.4th 1048, 1077, fn. 7 [*Kurtzman*-related error "appears to implicate

13

California law only"], overruled on another ground in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1; *Olivas*, *supra*, 248 Cal.App.4th at p. 775 [applying *Watson* in reliance on *Kurtzman* and *Berryman*].) But more recently, in *Hishmeh*, the Fourth District Court of Appeal seemed to suggest that *Kurtzman* error is harmless only if it did not contribute to the verdict beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*). (*Hishmeh*, *supra*, 52 Cal.App.5th at pp. 53–55, citing *U.S. v. Jackson* (9th Cir. 1984) 726 F.2d 1466, 1470.)

We conclude that *Watson* applies. Unlike *Hishmeh* and *Jackson*, *Kurtzman* and subsequent decisions from our state Supreme Court are binding upon us. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455.) In his briefing, Uc fails to recognize that *Kurtzman* itself applied the *Watson* standard to hold that the error in restricting deliberations it identified was harmless. (*Kurtzman*, *supra*, 46 Cal.3d at p. 335.) Moreover, in concluding that such error amounts to federal constitutional error, the Ninth Circuit Court of Appeals relied on "the rule that a defendant is entitled to a lesser-included offense instruction in a proper case," which " 'ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard.' " (*U.S. v. Jackson*, *supra*, 726 F.2d at p. 1470.) Uc, however, was not entitled to an instruction on the lesser *related* offense of trespass. Thus, even if we were otherwise able to disregard binding authority, we do not think that *Jackson*'s reasoning supports applying *Chapman* here.

The Attorney General argues that we can find the *Kurtzman* error harmless because the jury was properly instructed on reasonable doubt. Although we generally presume that a jury follows all instructions, *Kurtzman* is premised on the possibility that a juror will vote to convict on the greater

14

offense *despite* not being convinced of the defendant's guilt of that crime beyond a reasonable doubt. Moreover, unlike in other cases finding such error harmless, the record before us does not show that the jury actually discussed the lesser offense before reaching its verdict. (See, e.g., *Kurtzman, supra*, 46 Cal.3d at p. 335; *People v. Perez, supra*, 212 Cal.App.3d at p. 400.)

Nonetheless, based on the evidence as a whole, it is not reasonably probable that Uc would have obtained a better result absent the instructional error. (*Watson, supra*, 46 Cal.2d at p. 836.) The jury was instructed that to be guilty of burglary, Uc had to enter the Arguello Boulevard apartment building with an intent to commit theft, whereas to be guilty of trespass he need only have willfully entered the building without consent. We agree with the Attorney General that there was ample evidence that Uc had the intent to commit theft. Crucially, Uc admitted that he entered the building intending to take recyclables. As the prosecutor emphasized in closing argument, Uc's intent to steal recyclables "that [did] not belong to him" was sufficient to support a burglary conviction.

In addition, on the night Uc entered the apartment building he had burglary tools with him and was seen shining a flashlight on garage doors, evoking his behavior during the two other charged incidents. Even though he did not ultimately steal anything from the apartment building, the similarity of his acts on this occasion to the incidents when his intent to commit theft was plainer bolstered the inference that he had the requisite intent for burglary. In other words, given *all* the evidence presented—which the jury was specifically instructed it could consider in determining Uc's guilt of *any* of the crimes charged—it is not reasonably probable that any juror failed to be convinced of Uc's intent to commit theft when he entered the apartment building. The claim of instructional error fails.

B.     *Uc Was Entitled to a Jury Trial on the Bail Enhancements.*

The parties agree that the two-year bail enhancements were imposed in violation of the federal Constitution under *Erlinger v. United States* (2024) 602 U.S. 821 (*Erlinger*).  We accept the Attorney General's concession and reverse the enhancements, which can be tried to a jury on remand.

As noted above, the information alleged under section 12022.1, subdivision (b), that Uc was on bail when he committed the four felonies charged.  The jury was not instructed or asked to make findings on these allegations.  Indeed, the trial court specifically stated that the jury did "not have to establish" them.  Instead, in the court's view, the jury's verdicts supplied "all of the conditions necessary" to impose the bail enhancements.  Accordingly, the court imposed two-year terms for the enhancements attached to the Arguello Boulevard and Jefferson Street burglaries.[6]

In *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*), the United States Supreme Court held that criminal defendants have a federal constitutional right to a jury trial on "any fact that increases the penalty for a crime beyond the prescribed statutory maximum," except for "the fact of a prior conviction."  (*Id.* at pp. 476, 490.)  California courts then repeatedly " 'rejected a narrow or literal application of [*Apprendi*'s] reference to "the fact of a prior conviction," ' " construing it to encompass "recidivistic" factors enhancing punishment based on prior offenses as opposed to "conduct involved in the charged offense(s)."  (*People v. Johnson* (2012) 208 Cal.App.4th 1092, 1099 (*Johnson*).)  In *Johnson*, the Third District Court

---

[6] The other two bail enhancements alleged were not imposed, apparently because (1) the allegation attached to the Balboa Street attempted burglary was based on Uc's being out on bail for an earlier offense of which he was not convicted in this case (see § 12022.1, subd. (d)) and (2) the trial court stayed punishment for the grand theft.

16

of Appeal relied on such authorities to conclude that section 12022.1 is such "a recidivist statute," meaning defendants have no federal right to a jury trial on bail enhancements imposed under it. (*Johnson*, at p. 1100.)

At the time of Uc's sentencing in March 2024, *Johnson* was still good law. But three months later, the United States Supreme Court decided *Erlinger*, which concerned enhanced punishment for "committ[ing] three violent felonies or serious drug offenses on separate occasions." (*Erlinger*, *supra*, 602 U.S. at p. 825.) *Erlinger* held that the defendant was entitled to a jury trial on whether the previous offenses "took place on at least three different occasions," which the Court described as "a fact-laden task." (*Id.* at pp. 834–835.) In so holding, the Court reaffirmed that *Apprendi*'s "prior conviction" exception is "narrow," permitting a trial court to do no "more than identify [a defendant's] previous convictions and the legal elements required to sustain them." (*Id.* at p. 838.)

We agree with the parties that under *Erlinger*, Uc was entitled to a jury trial on the bail enhancements. The enhancements required findings that he was "released from custody on bail or on his . . . own recognizance" when he committed the offenses at issue. (§ 12022.1, subd. (a).) Such findings plainly go beyond the mere existence of other convictions. (See *Erlinger*, *supra*, 602 U.S. at p. 838; *People v. Wiley* (2025) 17 Cal.5th 1069, 1076, 1084 [applying *Erlinger* to require jury trial on whether convictions were of increasing seriousness and whether performance on probation was unsatisfactory].) We also agree with the parties that the omission of a jury trial was not harmless beyond a reasonable doubt, as there is no conclusive evidence in the record to indicate Uc's bail status at the time he committed the crimes at issue. (*Wiley*, at p. 1087; *Chapman v. California, supra*, 386 U.S. at p. 24.) Thus, we reverse the bail enhancements and remand for

17

the prosecution to have an opportunity to try the section 12022.1 allegations to a jury.

## III.
### DISPOSITION

The enhancements imposed under Penal Code section 12022.1, subdivision (b), are reversed.  The matter is remanded for further proceedings consistent with this opinion, including a full resentencing.  In all other respects, the judgment is affirmed.

_____

Humes, P.J.

WE CONCUR:

_____

Banke, J.

_____

Smiley, J.

*People v. Uc*  A170520

19